**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA, *et al.,* ,**<br><br>Plaintiffs,<br><br>v.<br><br>**JANSSEN PRODUCTS, L.P.,**<br><br>Defendant. | Civil Action No. 12-7758 (ZNQ) (JBD)<br><br>**OPINION**<br><br>**(TO BE FILED UNDER TEMPORARY SEAL)** |

**QURAISHI, District Judge**

**THIS MATTER** comes before the Court upon two omnibus Motions in Limine (the "Motions") filed by Defendant Janssen Products, LP ("Janssen") ("Janssen Motion", ECF No. 319) and Relators Jessica Penelow and Christine Brancaccio ("Relators") ("Relators Motion", ECF No. 318).

Janssen filed a brief in support of its Motion ("Janssen Moving Br.", ECF No. 319-1) and Relators opposed ("Relators Opp'n Br.", ECF No. 320). Janssen filed a reply. ("Janssen Reply Br.", ECF No. 323.) Relators filed a brief in support of their Motion ("Relators Moving Br.", ECF No. 318-1) and Janssen opposed ("Janssen Opp'n Br.", ECF No. 321). Relators filed a reply. ("Relators Reply Br.", ECF No. 322.)

Having reviewed the parties' submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause shown, Plaintiff's Motion in Limine will be GRANTED IN

1

PART and DENIED IN PART and Defendants Motion in Limine will be GRANTED IN PART and DENIED IN PART.

## I.    BACKGROUND AND PROCEDURAL HISTORY

Relators filed the instant action on behalf of the Government, twenty-seven states, and the District of Columbia against Defendants, alleging fifty-eight counts under the Federal False Claims Act ("FCA"), Federal Anti-Kickback Statute ("AKS"), and the false claims acts of various states. The claims arise from Defendants' purported misconduct in connection with its sales and marketing of two HIV/AIDS drugs: Prezista and Intelence. (*See* Am. Compl. ¶¶ 107-61, ECF No. 41.)

## II.    JURISDICTION

The Court exercises subject matter jurisdiction under 28 U.S.C. § 1331 and 31 U.S.C. § 3732(a) and (b). Venue is appropriate under 31 U.S.C. § 3732(a) because Janssen transacts business in this judicial district.

## III.    LEGAL STANDARD

A motion in limine is filed pre-trial and requests that the Court "prohibit opposing counsel from referring to or offering evidence on matters prejudicial to the moving party." *Laufen Int'l, Inc. v. Larry J. Lint Floor & Wall Covering*, *Co.,* Civ. No. 10-199, 2012 WL 1458209, at *1 (W.D. Pa. Apr. 27, 2012). The purpose of a motion in limine is to bar "irrelevant, inadmissible, and prejudicial" issues from being introduced at trial, thus "narrow[ing] the evidentiary issues for trial[.]" *Id.* Evidence should not be excluded pursuant to a motion in limine, unless it is clearly inadmissible on all potential grounds. *Leonard v. Stemtech Health Sciences, Inc*., 981 F. Supp.2d 273, 276 (D. Del. 2013) (citing *Laws v. Stevens Transport, Inc*., No. 2:12–cv–544, 2013 WL 4858653, at *1 (S.D. Ohio Sept. 11, 2013)). The movant bears the burden of demonstrating that the evidence is inadmissible on any relevant ground, and the court may deny a motion in limine

when it lacks the necessary specificity with respect to the evidence to be excluded. *Id.* (citing *Berry v. Mission Grp. Kan., In*c., Civ. No. 08-2439, 2010 WL 2160897, at *1 (D. Kan. May 28, 2010)). Evidentiary rulings, especially ones that encompass broad classes of evidence, should generally be deferred until trial to allow for the resolution of questions of foundation, relevancy, and potential prejudice in proper context. *Id. (*citing *Looney Ricks Kiss Architects*, Civ. No. 07-572, 2010 WL 5393864, at *1 (W. D. La. Dec. 22, 2010); *Diehl v. Blaw–Knox*, Civ. No. 01-0770, 2002 WL 34371510, at *1 (M.D. Pa. July 15, 2002)).

**IV.    DISCUSSION**

**A. JANSSEN'S MOTIONS**

**1. Whether the Court Should Preclude Relators and Various Fact Witnesses from Offering Lay Opinions About the Supposed Effect of Janssen's Promotional Activities on Doctors' Prescribing Decisions**

Janssen's first motion seeks to preclude trial testimony by Relators and other former Janssen employees about the effects of Janssen's promotional activities under Rule 701(c). (Janssen Moving Br. at 1.) Janssen argues that Relators and their proposed witnesses do not possess any specialized experience, knowledge, or credentials to opine on pharmaceutical marketing. (*Id*. at 3.) Janssen contends that the proposed testimony is also inadmissible under Rule 701 because it is not rationally based on any of the witnesses' perceptions. (*Id*.) Janssen maintains that the proposed witnesses' opinions are based on pure speculation. (*Id*. at 3–4.) Janssen claims that even if the proposed testimony were based on common sense, it would not be helpful to the jurors in determining a fact issue. (*Id*. at 5.) Further, Janssen argues that the witnesses' testimony will not be helpful to the jury to determine a fact issue. (*Id*.)

In opposition, Relators maintain that the seven witnesses are former Janssen sales representatives and regional managers who personally promoted the drugs and who witnessed

first-hand the effects of Janssen's unlawful marketing. (Relators Opp'n Br. at 1.) Relators argue that the proposed testimony does not require scientific or specialized knowledge. (*Id*. at 2.) Relators contend that the witnesses at issue are sales representatives and managers who personally engaged in or oversaw the promotion of Janssen products to doctors. (*Id*. at 2–3.) Relators argue that all seven proposed witnesses have direct, first-hand knowledge about the issues and is not pure speculation as Janssen suggests. (*Id*. at 5.) Relators further argue that the witnesses' testimony will help the jury determine causation. (Id.)

In reply, Janssen reiterates that the proposed witnesses do not have the qualifications to opine on the effects of the pharmaceutical marketing and such testimony would be speculative. (Janssen Reply Br. at 1.)

Federal Rule of Evidence[1] 701(c) states that a lay witness's testimony may not be "based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701(c). "Subsection (c) was added to address the risk that parties may try to evade the requirements of Rule 702 by 'proffering an expert in lay witness clothing.'" *Campmor, Inc. v. Brulant, LLC*, Civ. No. 09-5465, 2013 WL 12147616, at *5 (D.N.J. April 30, 2013) (quoting *Hirst v. Inverness Hotel Corp*., 544 F.3d 221, 227 (3d Cir. 2008) (internal citations and quotation marks omitted). The Third Circuit, however, recognizes that an expert witness is not always necessary when the testimony is of a specialized or technical nature:

> When a lay witness has particularized knowledge by virtue of her experience, she may testify—even if the subject matter is specialized or technical—because the testimony is based upon the layperson's personal knowledge rather than on specialized knowledge within the scope of Rule 702.

---

[1] For the sake of brevity, all references herein to "Rule" will be to the Federal Rules of Evidence.

*Donlin v. Philips Lighting North American Corp.*, 581 F.3d 73, 81 (3d Cir. 2009) (citations omitted); *see also United States v. DeMuro*, 677 F.3d 550, 562 (3d Cir. 2012) ("we have allowed professionals to give lay opinions when opinions are based on personal knowledge of the issues, along with specialized experiences") (citation omitted); *United States v. Thompson*, 393 F. App'x 852, 857–59 (3d Cir. 2010) (the district court did not err in permitting a company employee to testify as lay witness about GPS tracking device).

Janssen's first Motion in Limine seeks to preclude testimony on the effects of Janssen's promotional activities had on doctors. Janssen argues that the proposed testimony is based on pure speculation. (Janssen Moving Br. at 3.) Specifically, Janssen asserts that while the witnesses have testified that their opinions are generally based on increased sales following the alleged off-label promotion, "the truth is that their opinions are based on pure speculation." (Id. at 3–4.) Janssen, however, was afforded the opportunity to question and cross examine these witnesses at their depositions a to whether they did, in fact, have personal knowledge of the effect of the promotional activities. To preclude such evidence in this case based on the fact that the witnesses' personal knowledge and perceptions were not fully explored in their pre-trial deposition is an "extreme and unreasonable measure." *United Linen Wholesale, L.L.C. v. Northwest Co.*, Civ. No. 06-5934, 2010 WL 3724519, at *2 (D.N.J. Sept. 13, 2010). Had Janssen wished to question these proposed witnesses at their depositions concerning their personal knowledge, it was free to do so. If, as Janssen claims, the witnesses lack sufficient knowledge to offer a lay opinion as to promotional marketing effects, that will be explored before they are permitted to testify at trial. *See id.* The witness's personal knowledge and perceptions will need to satisfy the Court pursuant to Rule 701 at that time. Accordingly, the Court will not preclude this evidence based on this argument at this juncture.

Janssen's first Motion in Limine will therefore be denied without prejudice.

**2. Whether the Court Should Exclude Evidence or Argument Referring to Prezista or Intelence Prescription as "Misbranded" or Otherwise "Illegal"**

Janssen seeks to exclude Relators from referencing Prezista or Intelence prescriptions as "misbranded" or "illegal." (Janssen Moving Br. at 5.) Janssen argues that because this is not a "misbranding" case, Relators' use of these terms would suggest that Janssen violated the Food, Drug, and Cosmetic Act ("FDCA") and confuse the jury. (*Id.* at 6.) Janssen argues that any evidence or argument using the terms "misbranded" or "illegal" should be excluded under Rules 401 and 403. (*Id.*) Whether Prezista and Intelence were "misbranded" is not relevant to any claims or defenses because a purported marketing-based violation of the FDCA's misbranding provisions is not actionable under the False Claims Act ("FCA"). (*Id.*) The term "illegal" brings the same references because of the clear import of such an argument would be that Janssen is engaged in misbranding, which is no pertinent to any issue. (*Id.* at 8) Further, Janssen argues that even if the terms "misbranded" or "illegal" had probative value in an FCA case, it would be outweighed by the danger of confusing the issues where the jury must decide. (*Id.*) Relying on Rule 403, evidence that could confuse the dispositive issue in the case should be properly excluded. (*Id.* at 9.) Since the FDCA has nothing to do with what Relators must prove, referencing Prezista or Intelence prescriptions as "misbranded" or "illegal" will confuse the jury. (*Id.*)

In opposition, Relators argue that they should be permitted to introduce evidence and argument referring to Prezista and Intelence Prescriptions and "misbranded" or otherwise "illegal" because the court has already upheld their misbranding theory. (Relators Opp'n Br. at 12.) Relators maintain that the Court has already rejected Janssen's challenges to Relators' misbranding theory in its decision on Janssen's Motion to Dismiss. (*Id.* at 13.) Relators argue that the Court has already recognized that their misbranding theory is viable under the FCA. (*Id.* at 15.) Further,

Relators assert that there is nothing unduly prejudicial or confusing about a party offering evidence and argument about a theory of the case. (*Id.* at 16.)

In reply, Janssen claims that they are moving to narrow the evidence presented to the jury to questions that are actually at issue. (Janssen Reply Br. at 3.) Janssen asserts that Relators must prove that their claim that Prezista and Intelence prescriptions were false and referring to the prescriptions as "misbranded" has no relevance to the falsity theories. (*Id.*)

Under Rule 401, "relevant evidence" is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without evidence." Fed. R. Evid. 401. Relators' theory under Count One is specifically that Janssen violated the FCA by misbranding and off-labeling Prezista and Intelence. (Am. Compl. ¶ 222.) In deciding Janssen's Motion to Dismiss, the Court found that Relators adequately pled that Prezista[2] was not reasonable and necessary for certain patients to sustain their "misbranded and off-label prescriptions" theory under the FCA. (*See* ECF No. 86 at 9.) Accordingly, Relators referring to Prezista and Intelence as "misbranded" is relevant to their theory of FCA violations.

While the Court finds this relevant, Rule 403 permits a district court to exclude relevant evidence if "its probative value is substantially outweighed by the danger of unfair prejudice[.]" Fed R. Evid. 403. "A district court has broad discretion to determine the admissibility of relevant evidence in response to an objection under Rule 403." *United States v. Balter*, 91 F.3d 427, 442 (3d Cir. 1996). Rule 403 is a balancing test, and "[l]ike any balancing test, the Rule 403 standard is inexact, requiring sensitivity on the part of the trial court to the subtleties of the particular situation, and considerable deference on the part of the reviewing court to the hands-on judgment

---

[2] Janssen conceded that Realtors adequately pled the off-label use of Intelence. (*See* ECF No. 86 at 8 n.6.)

of the trial judge." *United States v. Guerrero*, 803 F.2d 783, 785 (3d Cir. 1986). Here, Janssen argues that referencing Prezista and Intelence as "misbranded" and "illegal" will be unduly prejudicial and confuse the jury under Rule 403.

The relevant provisions of the FCA prohibit any person from: (1) "knowingly present[ing], or caus[ing] to be presented, a false or fraudulent claim for payment or approval"; and (2) "knowingly mak[ing], us[ing], or caus[ing] to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(A), (B). Here, nothing within Relators' Complaint indicates their theories would require them to refer to the prescriptions as "illegal" or "misbranded" to bring a successful FCA claim against Janssen. A jury finding that the prescriptions were in fact, illegal or misbranded, under the FCA is the ultimate finding Relators seek to receive in Count One. (*See* generally, Am. Compl.) Accordingly, referring to the prescriptions as "illegal" or "misbranded" is unduly prejudicial and confusing to the jury. The Court will therefore preclude Relators from referring to the prescriptions as "illegal" and "misbranded."

Janssen's Motion to Exclude Evidence or Argument to Prezista or Intelence Prescription as "Misbranded" or Otherwise "Illegal" will therefore be granted.

### 3. Whether the Court Should Exclude Testimony or Argument Referring to Janssen's Promotion of Prezista's Lipid Profile, Prezista Prescriptions Written for Patients with Lipid Conditions, or Claims Submitted for Prezista Prescriptions Written for Patients with Lipid Conditions as "Off-Label."

Janssen contends that the vast majority of prescriptions Relators claim were fraudulent were *on-label* prescriptions. (Janssen Moving Br. at 10.) Janssen argues that Relators should be precluded from referring to this case as an "off-label" case and referring to Prezista prescriptions written for patients with lipid conditions as "off-label." (*Id*. at 11.) Further, Janssen argues that describing this as an "off-label" case is confusing and misleading to the jury. (Id. at 12.) Janssen

claims that Relators must prove a different theory of falsity for on-label prescriptions than for off-label prescriptions. (*Id*.) Janssen argues that Relators should be precluded from using the term "off-label" to describe on-label prescriptions under Rule 403. (Id. at 13.) In opposition, Relators argue that Janssen's attempt to preclude them from referring to their conduct as "off-label" is a transparent attempt to relitigate an issue Janssen already lost on its Motion to Dismiss and Motion for Summary Judgment. (Relators Opp'n Br. at 17.) Relators contend that Janssen has twice tried to dismiss Relators' Prezista lipid claim, and twice has been denied. (*Id*.) Relators additionally argue that there is "no merit to Janssen's contention that relator's lipid claim is somehow 'on-label' as opposed to 'off-label[.]'" (*Id*. at 19.)

In reply, Janssen argues that its Motion seeks to exclude the "off-label" language rather than relitigate the viability of Relators' Prezista lipid theory of liability. (Janssen Reply Br. at 6.) Janssen contends that "while Relators are free to present their Prezista lipid claims to the jury, they must do so correctly and precisely, and any evidence or argument referring to such Prezista promotion or prescriptions as 'off-label' must be excluded." (*Id*. at 8.)

In denying Janssen's Motion for Summary Judgment, the Court rejected Janssen's argument that this is not an off-label case and recognized that whether Prezista's label warned about any lipid-related side effects constituted a genuine issue of material fact for the jury to determine. (*See* ECF No. 291 at 18.) The Court accepted Relators' legal theories as to proving the elements of FCA and Anti-Kickback Statute violations. (*Id*. at 18–19.) Specifically, the Court held that whether Prezista's label warned about any lipid-related side effects "constitute[d] a genuine issue of material fact as to Relators' FCA claims concerning Prezista's lipid profile." (*Id*. at 18.) The Court additionally held that "[u]nder either the OL promotion theory or the AKS violation theory, . . . Relators have raised sufficient questions of material fact to preclude summary

judgment as to whether Prezista claims for benefits made by patients with lipid conditions were false within the meaning of the FCA." (*Id*. at 18–19.) Accordingly, because the Court has already determined that the jury will decide the scope of Prezista's label as to lipids, Relators are entitled to present their theory—that Janssen's promotion of Prezista was off-label—to the jury.

Further, the Court finds that referencing off-label prescriptions is not unduly prejudicial pursuant to Rule 403. Janssen argues that describing this as an off-label case would confuse the jury and mislead them regarding fundamental issues and Relators' burden of proof. (Janssen Moving Br. at 12.) The Court will, however, properly instruct the jury that Relators bear the burden of proof to establish the elements of an FCA action. Any prejudicial effect the evidence may have will therefore not substantially outweigh its probative value.

Accordingly, Relators will not be precluded from referencing off-label prescriptions based on this argument. Janssen's third Motion in Limine will therefore be denied without prejduice.

### 4. Whether the Court Should Exclude Any Evidence or Argument Referencing Anthony Dolisi's Assertion of his Fifth Amendment Right to Refuse to Answer Questions in Response to a Civil Investigative Demand for Oral Testimony

Janssen seeks to preclude Relators from offering evidence or argument referencing Anthony Dolisi's ("Dolisi") invocation of his Fifth Amendment right during his June 2016 Civil Investigative Demand deposition under Rule 403. (Janssen Moving Br. at 13.) Specifically, Dolisi was deposed on June 20, 2016 by an Assistant United States Attorney in relation to a Civil Investigation Demand. (*Id*. at 14.) At that deposition, Dolisi asserted his Fifth Amendment right to not testify as to matters within the scope of his employment with Janssen. (*Id*.)

Dolisi, however, later revoked his Fifth Amendment invocations and sat for a full deposition with Relators' counsel and answered all of their questions on key issues of this case. (*Id*. at 16.)

Relators now seek to introduce his previously revoked Fifth Amendment invocations as impeachment evidence against Dolisi. (Relators Opp'n Br. at 24.)

The Court will grant Janssen's motion. Any "potential probative value of [Dolisi's] invocation of the Fifth Amendment is . . . reduced by the fact that [he] subsequently answered all of the questions," and "the potential prejudice . . . is high," such that it substantially outweighs any probative value. *In re Urethane Antitrust Litigation*, Civ. No. 08-5169, 2016 WL 475339, at *5 (D.N.J. Feb. 8, 2016) (quoting *Harrell v. DCS Equipment Leasing Corp.*, 951 F.2d 1453, 1464-65 (5th Cir. 1992)) (internal citations omitted); *see also* Rule 403 (court may exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice). Relators will therefore be precluded from referencing Dolisi's prior invocation.

### 5. Whether the Court Should Exclude Evidence or Argument Referencing Regulatory or Other Government Guidance on Speaker Programs Or Other Promotional Activities After 2014

Janssen indicates that Relators' claims challenge Janssen's conduct with respect to speaker programs and promotional events between the years 2006 and 2014. (Janssen Moving Br. at 18–19.) Janssen seeks to preclude evidence and testimony regarding government guidance on these topics that was issued after 2014. (*Id*. at 19.) Janssen argues that post-2014 guidance and related testimony are not relevant because the regulatory changes that post-date the challenged conduct are not probative of whether that behavior was unlawful at the time it occurred. (*Id*. at 19–20.) Janssen maintains that introduction of post-2014 guidance would distract jurors from considering what Janssen actually knew when it engaged in the behavior at issue here. (*Id*. at 20–21.)

Here, Relators concede that reference to post-2014 guidance is irrelevant to Janssen's scienter. (Relators Opp'n Br. at 29.) Rather, Relators seek to introduce this evidence to demonstrate materiality. (Id.) Relators rely on *United Health Servs. Inc. v. Escobar*, 579 U.S. 176

(2016) for its position that the government has always—before, during, and after the relevant time period—considered Anti-Kickback Statute violations and false and misleading marketing, misbranding, and off-label marketing to be material. (*Id.* at 29–30.) Relators indicate that Janssen points to HHS-OIG guidance from 2020 and that guidance is also relevant to materiality. (*Id.* at 31.)

In reply, Janssen reiterates that the government guidance issued after 2014 should be excluded because it is not relevant to the conduct at issue and would be unfairly prejudicial and confusing to the jury. (Janssen Reply Br. at 11.) Janssen argues that Realtors' reliance on *Escobar*, 579 U.S. 176, is misplaced, claiming that "[n]owhere in *Escobar* does the Supreme Court say that the government can issue guidance that retroactively applies to claims that are more than a decade old." (*Id.* at 11.)

Here, the Court finds that post-2014 guidance—guidance issued after the Relevant Time Period—is not relevant. Regulatory changes made after the Relevant Time Period are irrelevant as to whether the behavior was unlawful at the time it occurred. *See United States v. Allergan Inc.*, 746 F. App'x 101, 109 (3d Cir. 2018). Accordingly, the Court will preclude Realtors from introducing any evidence of guidance on speaker programs or other promotional activities after 2014 as part of their case in chief.

The Court will, however, not preclude Realtors from introducing such evidence in rebuttal or on cross-examination should Janssen raise post-2014 regulatory guidance at trial.

**6. Whether the Court Should Preclude Any Evidence Or Argument Referencing Other Investigations, Litigation, or Settlements Involving Janssen Or Any Other Pharmaceutical Company and the Federal Government**

Janssen seeks to preclude evidence of other government investigations, litigation and settlements including: (1) a 2013 settlement by Johnson & Johnson and Janssen related to the

marketing of anti-psychotic and heart failure drugs, (2) a 2010 settlement by Ortho-McNeil-Janssen Pharmaceuticals related to that company's marketing of anti-epileptic drug, and (3) investigations related to prescription medications manufactured by Allergan, Wyeth Pharmaceuticals, and Merck. (Janssen Moving Br. at 21.) Janssen argues that evidence of other government investigations, litigation, and settlements is not relevant. (*Id*. at 22.) Janssen contends that the 2013 settlement by Johnson & Johnson and Janssen related to the marketing of anti-psychotic and heart failure drugs and has no bearing on whether Relators can prevail on their FCA claims. (*Id*.) Further, Janssen asserts that the 2010 settlement with Ortho-McNiel-Janssen Pharmaceuticals is also irrelevant to the instant matter because it involved other medications, and it was based on alleged conduct by a company that is not a part of this lawsuit. (*Id*. at 23.) Janssen argues that this evidence is not material to the government's reimbursement decision in this case because it is based on the marketing of different medications for non-FDA approved conditions. (*Id*.) Janssen additionally argues that even if this evidence is relevant, it would still be inadmissible under Rule 403 because it would mislead the jury into thinking Janssen or unrelated non-parties acted improperly in prior cases. (*Id*. at 24.)

Janssen further contends that evidence related to prior government investigations, settlements, and litigation is also barred by Rule 404 because it would unfairly suggest that Janssen and other pharmaceutical companies have a propensity to engage in bad conduct. (*Id*. at 25.)

In opposition, Relators argue the evidence Janssen seeks to preclude bears directly on materiality. (Relators Opp'n Br. at 33.) Relators contend that within the same time period of Janssen's alleged unlawful off-label and kickback schemes, Janssen and/or its affiliates entered into two settlements with the federal government and two Corporate Integrity Agreements ("CIAs") with the United States Department of Health and Human Services. (*Id*.) Relators claim

that both settlements and CIAs from 2010 and 2013 required extensive actions by Janssen and/or its affiliated entities aimed at improving Janssen's compliance with federal healthcare laws when promoting its drugs.  (*Id*. at 34.)  Relators argue that the steps Janssen took or did not take before, during, or after the 2010 CIA with Otho-McNeil-Janssen Pharmaceuticals, are directly relevant to materiality and scienter.  (*Id*. at 35.)  Further, Relators assert that the 2013 settlement and CIA involved the unlawful promotion of drugs and that it implemented strict requirements to ensure compliance with federal healthcare requirements.  (*Id*. at 37.)  Relators argue that these provisions of the 2013 CIA included provisions related directly to preventing off-label marketing of all of Janssen's drugs.  (*Id*.)  Relators additionally contend that the 2013 CIA entitled "Speaker Program Controls," which required Janssen to implement specific controls on speaker venues.  (*Id*. at 38.)

As to Janssen's Rule 404 argument, Relators maintain that the disputed evidence here falls outside the scope of Rule 404(a)(1) because they seek to introduce this evidence to establish their burden of proof on key elements.  (*Id*. at 40.)  Relators additionally argue that to the extent this evidence is considered Rule 404 material, it falls within the permitted use set forth in Rule 404(b)(2).  (*Id*.)  Further, Relators assert that this evidence is not unduly prejudicial because it demonstrates "Janssen's inadequate compliance oversight of its speaker program and OL marketing by its sales personnel, and establishes materiality under the FCA."  (*Id*. at 41.)

In reply, Janssen reiterates that other government investigations, litigation, and settlements involving Janssen, affiliated companies or other pharmaceutical companies is inadmissible under Rules 401 and 403.  (Janssen Reply Br. at 13.)  Janssen argues that Relators have failed to explain the relevance of the 2010 and 2013 investigations because they fail to "attempt to establish that either the 2010 or 2013 investigations involved conduct that had any similarity to Janssen's alleged conduct in this litigation."  (*Id*. at 14.)

Here, the evidence Janssen seeks to preclude is relevant and probative to Relators' FCA claims. The 2010 CIA (Relators Opp'n Br. at Ex. K, ECF No. 320-11) required improved policies and procedures to address compliance with Anti-Kickback Statutes, training obligations related to promotional functions, investigations of potential off-label promotion, and an internal monitoring program to evaluate and monitor interactions with physicians. (*See* ECF No. 320-11.) Further, the 2013 CIA included a section entitled "Speaker Program Controls," which required Janssen to implement specific controls on speaker programs. (See Relators Opp'n Br. at Ex. L, ECF No. 320-12 at 35.) Evidence of whether Janssen complied with such settlements and CIAs is therefore probative to its scienter and materiality in the instant matter. The compliance steps Janssen took or did not take before, during, and after the execution of both the 2010 and 2013 settlements and CIAs are directly relevant to scienter and materiality, both of which are essential elements to Relators' claims. *See United States ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 487 (3d Cir. 2017).

Additionally, such evidence is not barred under Rule 404. While character evidence is generally barred, Rule 404 permits evidence of prior acts if it is being used to prove another purpose "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Rule 404(b)(2). Here, evidence of the 2010 and 2013 settlements and CIAs are permitted as long as Relators introduce such evidence for a purpose other than showing that Janssen acted in accordance with his character or a particular character trait in the past.

Further, Janssen's concern that admission of materials related to other government investigations and settlements would confuse the jury can be cured by issuing a limited instruction. Limiting instructions are an appropriate way to ensure that a jury understands the purpose for

which evidence of prior acts may be considered, and such instructions are generally sufficient "to cure any risk of prejudice[.]" *Zafiro v. United States*, 506 U.S. 534, 539 (1993); *see United States v. Universal Rehabilitation Servs. (PA) Inc.*, 205 F.3d 657, 668 (3d Cir. 2000) ("we have also consistently held that this prejudicial effect is typically cured through a curative instruction to the jury" (discussing the prejudicial effect of a witness's guilty plea)); *United States v. Scarfo*, 41 F.4th 136, 180–81 (3d Cir. 2022).  Accordingly, Janssen's motion as it relates to the evidence of other government investigations, settlements, and CIAs will be denied based on this argument.  The Parties will, however, be permitted the opportunity to meet and confer to submit a proposed limiting instruction on the issue.

### 7. Whether the Court Should Bar Relators and Certain Lay Witnesses from Testifying About Why Doctors Were Selected to be Speakers for Janssen, and Janssen's Purpose or Intent in Paying These Doctors for their Professional Services

Janssen claims that Relators and certain of their witnesses, Mark Wilhelm, Donna Graham, Joseph Holshoe, Sara Strand, and Matthew Grooms intend to testify regarding Janssen's alleged "improper implementation of the Speaker Program."  (Janssen Moving Br. at 26.)  Janssen seeks to preclude such testimony because these witnesses have no personal knowledge of decisions regarding Janssen's speaker program.  (*Id.* at 26–27.)  Janssen argues that deposition testimony from Relators' witnesses confirms that they have no personal knowledge of the selection process.  (*Id.* at 29.)

In opposition, Relators argue that Janssen "has contorted the testimony of these witnesses in an attempt to downplay their actual knowledge of the issues."  (Relators Opp'n Br. at 42.)  Relators assert that these witnesses all have direct personal knowledge of these matters.  (*Id.*.)

In reply, Janssen clarifies that it only moves to preclude Relators and their witnesses from testifying on two specific topics; it does not move to preclude testimony about all aspects of

Janssen's speaker programs as Relators suggest. (Janssen Reply Br. at 18.) Janssen argues that Relators and their witnesses should be precluded from testifying about why doctors were selected to be speakers for Janssen because the witnesses were not involved in the ultimate selection decision. (*Id*. at 19.) Janssen next contends that "Relators and their witnesses should be precluded from testifying that the purpose of Janssen's payments to speakers was to induce the speakers to prescribe Prezista and Intelence because, as sales employees, they were not involved in determining the amounts the speakers were paid, or in preparing any analytics whatsoever regarding speaker payments or prescriptions". (*Id*.)

Rule 602 demands that a witnesses have "personal knowledge" of a matter about which they are testifying. Fed. R. Evid. 602. Janssen seeks to preclude testimony from Relators' witnesses concerning the decision-making process in the speaker engagements because it claims the witnesses lack personal knowledge on the matter to testify pursuant to Rule 602.

Janssen seeks to preclude Relators' witnesses from testifying as to why doctors were selected for speaking events and whether the purpose of Janssen's payments to speakers was to induce them to prescribe Intelence. Sara Strand's deposition testimony ("Strand Dep.", ECF No. 320-2) indicates that the marketing department ultimately made the decision as to who would be selected for the speakers. (Strand Dep. 85:4–8.) Jessica Penelow additionally testified ("Penelow Dep.", ECF No. 320-5) that she was not privy to the information as to why a speaker would be denied. The witnesses, however, were able to testify as to the criteria. (Penelow Dep. 66:2–8.) When asked who was involved in selecting doctors to be on the speakers bureau, Joseph Marion Holshoe testified ("Holshoe Dep.", ECF No. 324-7) that he "[couldn't] say exactly" and he did not have any role in selecting speakers. (Holshoe Dep. 81:11–24.)

Relators cite testimony from sales representatives indicating their involvement with planning and running the speaker program, but the testimony demonstrates that the sales representatives did not have personal knowledge as to how the speakers were ultimately selected. The Court declines to bar the sales representatives' testimony at this time because its admissibility may depend on the exact nature of the witnesses' testimony and the extent to which Relators can rehabilitate their knowledge at trial. This denial is without prejudice to Janssen's right to raise this objection at trial (presumably under Rule 602) at which time the Court will address it. Janssen's seventh Motion in Limine will therefore be denied without prejudice.

### 8. Whether the Court Should Exclude Evidence or Argument Regarding the Amount of Funds Janssen May Have Set Aside to Litigate this Case

Janssen seeks to exclude evidence that a financial reserve maintained hundreds of millions of dollars for litigation costs for the possibility of the instant litigation. Relators do not oppose this argument. Accordingly, the Court will grant Janssen's eighth Motion in Limine.

## B. RELATORS' MOTIONS

### 1. Whether the Court Should Exclude Any Comment, Reference, or Evidence Concerning the Government's Decision Not to Intervene in This Case

Relators first seek to exclude any evidence or argument regarding the Government's non-intervention under Rules 402 and 403. (Relators Moving Br. at 2.) Relators argue that the Government's non-intervention is not relevant to the merits of the instant action. (Id. at 2–3.) Relators contend that courts consistently find that the Government's decision not to intervene is irrelevant, citing to several extra-jurisdictional cases. (*Id*. at 3.) Relators assert that not only is it not relevant, but evidence of the Government's non-intervention is highly prejudicial because it undermines the FCA's *qui tam* provisions. (Id. at 4.)

In opposition, Janssen argues that the Government's inaction is highly relevant to materiality. (Janssen Opp'n Br. at 1.)  Janssen asserts that the Government's non-intervention supports a conclusion that it does not consider the regulatory violation to be material. (*Id*.) Janssen contends that the Government's decision not to intervene in this matter strongly "strongly supports a finding that materiality is absent and is therefore highly relevant and admissible. (Id. at 4.) Janssen argues that in the alternative, if the Court decides to exclude evidence of the Government's non-intervention, then the Court should revisit the issue at trial should Relators "open the door" to suggesting that Relators represent the Government or that this is the Government's lawsuit. (*Id*. at 6.)

In reply, Relators argue that the Government's non-intervention in a *qui tam* case is inherent in the statutory design of the FCA. (Relators Reply Br. at 1.)  Relators contend that Janssen's response brief fails to cite a case in which the court has permitted evidence of the Government's non-intervention decision at trial. (Id.)  Specifically, Relators argue that the cases Janssen cites are both factually and procedurally inapposite. (Id. at 2.)

Rule 401 of the Federal Rules of Evidence defines relevant evidence as "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401. Here, evidence of the Government's non-intervention is not relevant.  Presently, the Court has not been presented with any evidence nor testimony "linking the Government's non-intervention with its actual motivation for doing so." *See U.S. ex rel. El-Amin v. George Washington University*, 533 F. Supp.2d 12, 20 (D.C. Cir. 2008).  Evidence of the Government's non-intervention is not probative of how it determined the merits of the instant case.  Accordingly, the Court finds that evidence of the Government's non-intervention will be precluded.  The Court will grant Relators' first Motion

in Limine, but it will revisit this issue at trial should Relators present evidence or argument at trial that "opens the door" as to the Government's involvement or lack thereof.

**2. Whether the Court Should Preclude Any Comments, References, or Evidence Related to the Imposition of Treble Damages and Statutory Penalties.**

Relators next seek to preclude any comment, reference, or evidence related to the imposition of treble damages or statutory penalties because such evidence is irrelevant and highly prejudicial. (Relators Moving Br. at 4.) Janssen does not oppose this Motion. (Janssen Opp'n Br. at 37.) Janssen, however, argues that it is entitled to cross-examine Relators about their significant financial interest in the outcome of this case. (*Id*. at 38.) On this issue, the Court will make a determination should the issue arise at trial.

The Court therefore will preclude any evidence related to the imposition of treble damages or statutory penalties as prejudicial under Rule 403. *See Cook County v. United States ex rel. Chandler*, 538 U.S. 119, 131-32. Relators' second Motion in Limine will therefore be granted.

**3. Whether the Court Should Preclude Any Comment, Reference, or Evidence to the Collateral Consequences of Finding Janssen Liable**

Relators next seek to preclude Janssen from arguing or presenting evidence that a judgment or verdict adverse to Janssen in this case would result in collateral consequences. (Relators Moving Br. at 6.) Janssen does not oppose this Motion. (Janssen Opp'n Br. at 39.) The Court therefore finds that evidence of collateral consequences of an adverse verdict against Janssen is prejudicial under Rule 403 and will be precluded. *See Shannon v. United States*, 512 U.S. 573, 579 (1994). Relators' third Motion in Limine will therefore be granted.

**4. Whether the Court Should Preclude Any Comment, Reference, or Evidence Related to Janssen's Alleged Good Character or Reputation**

Relators argue that Janssen should not be permitted to introduce evidence of Janssen's good character or reputation. (Relators Moving Br. at 8.) Relators contend that such evidence is

inadmissible character evidence under Rule 404(b).  Janssen does not oppose this Motion.  The Court therefore finds that evidence of Janssen's good character or reputation, such as evidence of good corporate citizenship, socially valuable research and development efforts, etc., is inadmissible character evidence under Rule 404(b).  *See In re Tylenol (Acetaminophen) Marketing*, Civ. No. 12-7263, 2016 WL 3125428, at *11 (E.D. Pa. June 3, 2016).  The Court will therefore preclude such evidence and grant Relators' fourth Motion in Limine.

### 5. Whether the Court Should Exclude Any Comment, Reference, or Evidence Related to Comparing Janssen's Speaker Program with Other Companies' Speaker Programs

Relators seek to exclude evidence of other companies' speaker programs under Rules 401 and 403.  (Relators Moving Br. at 10.)  Relators argue that any suggestion by Janssen that speaker programs were common in the industry would mislead the jury , "potentially leading the jury to believe that the 'everyone was doing it' defense is viable."  (*Id*. at 11.)  Relators contend that this evidence would lead to "mini trials" about programs that are not at issue in this case, which would distract and confuse the jury.  (*Id*. at 12.)

In opposition, Janssen argues that evidence regarding similar speaker programs and industry custom is highly relevant.  (Janssen Opp'n Br. at 8.)  Janssen contends that the Court has already recognized that evidence that Janssen promoted its prescription medications through similar speaker programs to those employed by other pharmaceutical companies is "pertinent" to this case.  (Id.)  Janssen maintains that courts considering the scienter requirement of a FCA claim "routinely consider evidence of industry custom or practice to be relevant because it speaks directly to whether there is a 'common misunderstanding' of government regulations and whether the defendant 'acted according to that understanding.'" (*Id*.) (citing *Skibo el rel. United States v. Greer Labs., Inc*., 841 F. App'x 527, 533–34 (4th Cir. 2021).  Janssen argues that other pharmaceutical

companies' speaker programs reflect industry-wide practices regarding the government regulations at issue here.  (*Id*. at 9.)  Further, Janssen contends that this evidence will not confuse the issues or mislead the jury because jurors are "more than capable of evaluating evidence of industry-wide speaker programs and the extent to which Janssen comported itself in accordance with those practices without using that evidence for an improper use."  (*Id*. at 11–12.)  Janssen argues that the cases Relators cite to support their position do not involve FCA or Anti-Kickback claims.

In reply, Relators argue that if Janssen's knowledge of other companies' speaker programs is relevant, "then so to is its knowledge of enforcement actions and settlements related to other speaker programs.  (Relators Reply Br. at 6.)

To succeed on Anti-Kickback and FCA claims, Relators must prove defendants acted knowingly and willfully.  31 U.S.C. § 3729(a)(1)(A); 42 U.S.C. § 1320a-7b(b)(2).  Other pharmaceutical companies' speaker programs reflect industry wide practices regarding the government regulations that Relators contend Janssen knowingly and willfully violated.  Accordingly, evidence regarding other companies' speaking programs is therefore relevant.

The Court additionally finds that the prejudicial effect of this evidence does not substantially outweigh its probative value.  Evidence of industry standards is highly probative and any concern of misleading the jury can be cured with a limiting instruction.  *See Axiall Corp. v. Descote S.A.S.*, Civ. No. 15-250, 2017 WL 9487085, at *5 (W.D. Pa. Oct. 27, 2017).

Further, the Court has already determined that evidence of prior settlements and litigation was relevant for the Relators' to prove scienter and materiality.  The Court will therefore permit evidence of other speaking engagements based on this argument.  Accordingly, Relators request

to exclude evidence of other companies' speaker programs under Rules 401 and 403 will be denied without prejudice.

### 6. Whether the Court Should Preclude Any Comment, Reference, or Evidence Relating to Relators' Fee Agreement With Counsel or Relators' Ability to Recover Attorneys Fees, Costs, and Expenses Under the FCA

Relators next seek preclusion of evidence relating to Relators' fee agreements with counsel or Relators' ability to recover attorney fees, costs, or expenses under the FCA.  (Relators Moving Br. at 12.)  Relators argue that the existence and terms of their fee arrangement are irrelevant and prejudicial.  (*Id.* at 13.)  Janssen does not oppose this Motion.  (Janssen Opp'n Br. at 37.)  Relators' sixth Motion in Limine will therefore be granted.

### 7. Whether the Court Should Preclude Any Comment, Reference, or Other Evidence Related to Relators Not Having Been Damaged by Janssen's Conduct

Relators claim their operative complaint alleges that Janssen's conduct has caused harm to the United States as well as to several States.  (Relators Moving Br. at 15.)  Relators contend that whether or not they suffered any injuries as a result of Janssen's conduct is irrelevant and only serves to confuse the jury.  (*Id.*)  Relators argue that because this case is about harm suffered by the Government, whether Relators individually suffered damages would be "irrelevant, confusing, prejudicial, and a waste of time."  (*Id.* at 16.)

In opposition, Janssen argues that this Motion should be denied because the evidence is relevant to Relators' allegations that they were injured by Janssen and it bears on their credibility.  (Janssen Opp'n Br. at 14.)  Janssen contends that Relator Jessica Penelow ("Penelow") claims she was denied certain promotions or positions because she supposedly refused to improperly promote Prezista or Intelence.  (*Id.* at 15.)  Janssen claims it should have the opportunity to question Penelow and the other Relator in front of the jury about this and similar allegations because

Relators have placed the question of injury at issue through their statements and testimony. (*Id*.) Further, Janssen argues that this evidence is relevant to Relators' credibility. (*Id*. at 15–16.)

In reply, Relators assert that they are not intending to prevent Janssen from cross-examining Relators regarding their allegations in this case. (Relators Reply Br. at 8.) Relators argue that Janssen should not be permitted to argue or suggest that Relators must suffer harm or damages to prevail. (*Id*. at 9.)

The instant matter involved FCA and Anti-Kickback Statute claims, neither of which require Relators to prove individual damages or harm. Evidence concerning lack of harm or damages is therefore irrelevant to Relators' claims. The Court will therefore preclude any reference to Realtors' lack of harm. Relators' seventh Motion in Limine will therefore be granted.

### 8. Whether the Court Should Preclude Any Comment, Reference, or Evidence Regarding Earlier Versions of the Complaint or the Fact that the Complaint was Amended

Relators next seek to preclude evidence regarding previous versions of the complaint. (Relators Moving Br. at 16.) Janssen does not oppose this Motion. (Janssen Opp'n Br. at 39.) The Court will therefore preclude such evidence and grant Relators' eighth Motion in Limine.

### 9. Whether the Court Should Preclude Any Comment, Reference, or Evidence Regarding the Public Policy Behind HIV Drugs and Patient Accessibility

Relators seek to preclude Janssen from making the argument that it is the United States' policy to pay for HIV medications because it is "calculated to mislead the jury into believing that the government will pay for HIV medications even when the underlying claims are known to be false." (Relators Moving Br. at 18.) Relators contend that the relevant issue is not whether HIV patients should have access to Prezista and Intelence, or whether governmental policy favors improving access to HIV drugs, but rather, "whether the Government would reimburse for claims

that resulted from Janssen's specific promotional activity and payment of alleged kickbacks." (*Id.* at 19.)  Relators contend that such evidence will confuse the jury.  (*Id.*).

In opposition, Janssen argues that the evidence at issue is directly relevant to the question of materiality, or, why the Government payors paid for Prezista and Intelence.  (Janssen Opp'n Br. at 18.)  Janssen contends that Government policies concerning the coverage of HIV treatment are relevant to whether the alleged falsity of the claims for reimbursement for Prezista and Intelence was material to the Government payors' decision to pay those claims.  (*Id.*).

In reply, Relators argue that Janssen "should not be permitted to argue for jury nullification based on HIV policy or the importance of treating the disease."  (Relators Reply Br. at 9.)

The materiality inquiry focuses on "the effect on the likely or actual behavior of the recipient of the alleged misrepresentation," which is always the Government payors in the FCA context.  *Petratos*, 855 F.3d at 491.  Further, the FCA's materiality standard is "demanding" and "rigorous," requiring more than a showing that the government payor "designates compliance with a particular . . .requirement as a condition of payment.  *Id*. at 489–90.  To prevail, Relators materiality element hinges on the Government payor's perspective. Janssen is entitled to rebut Relators' materiality evidence by presenting evidence of Government payment policy.  The Court will therefore deny Relators' ninth Motion in Limine based on this argument.  To avoid jury confusion, the Court will permit parties to meet and confer and propose a limiting instruction on this issue.

### 10. Whether the Court Should Exclude Evidence Regarding Documents that Janssen Did Not Produce During Discovery

Relators claim that Janssen's trial exhibit list contains numerous documents that Janssen failed to produce during discovery, despite the fact that these documents were responsive to Relators' requests for production.  (Relators Moving Br. at 20.)  Relators argue that because

Janssen failed to disclose the responsive documents, the admission of these documents would unfairly prejudice Relators. (*Id*.) Relators contend that this evidence would cause prejudice and surprise to them because Janssen did not provide any indication that these documents existed or that it might rely on these documents at trial. (*Id*. at 23.) Relators assert that they were deprived of the opportunity to depose Janssen's witnesses about these documents as a result of their non-disclosure. (*Id*.) Relators argue that the prejudice caused by the non-disclosure cannot be cured at this late date, considering it is now several years after discovery and the case is ready for trial. (*Id*. at 24.) To cure the prejudice, Relators maintain that they would have to be given the opportunity to depose Janssen's witnesses and "submit new expert reports regarding the newly identified studied and compliance policies produced by Janssen, which might require additional expert discovery regarding new opinions." (*Id*.) Such a process, Relators contend, would be costly and timely. (*Id*.) Further, Relators argue that the admission of the newly discovered evidence would prevent the trial from going forward. (*Id*.) Relators additionally claim that Janssen's failure to disclose these documents suggests bad faith or willful failure to comply with its discovery obligations. (*Id*. at 25.) Finally, Relators assert that while these documents are important, they are "not so important that excluding them would deprive Janssen of its ability to put on its defense." (*Id*.)

In opposition, Janssen argues that it should deny Relators' Motion because it did not violate its discovery obligations as to any of the disputed documents. (Janssen Opp'n Br. at 24.) Janssen argues that Relators cannot establish a violation of Federal Rules of Civil Procedure 37 because Janssen either timely produced the challenged evidence or had no obligation to do so. (*Id*. at 25.) Janssen contends that it produced "exact or near-duplicates of all four of the [scientific] studies published within the 'Relevant Time Period' applicable to Relators' document requests[.]" (*Id*.)

Janssen asserts that the two remaining articles identified by Relators were published outside the Relevant Time Period and were not produced. (*Id*. at 26.) Janssen further maintains that the 13 performance reviews of Relators and their witnesses are not subject to pretrial disclosure rules because they are only intended for impeachment purposes. (*Id*.) Specifically, Janssen contends that Relators' Third Request for Production Nos. 12 and 31 sought documentation of Janssen's compliance with its GCC program and Healthcare Compliance Program. (*Id*. at 27–28.) Janssen argues that Relators Third set of Requests for Production do not seek all documents related to Janssen's compliance efforts generally. (*Id*. at 28.) As a result, Janssen contend that these three exhibits were not responsive to the discovery requests, and it was under no obligation to produce them. (*Id*.) Furthermore, Janssen contends that any purported discovery violation was substantially justified or harmless. (*Id*.)

In reply, Relators argue that as to the "scientific studies" (exhibits DX1075, DX1089, DX1098, and DX1102), if the produced versions are equivalent to the unproduced ones, then there should be no prejudice to Janssen to be required to use the produced versions. (Relators Reply Br. at 10.) As to DX6073-74, DX6079-83, and DX6085-88, the exhibits Janssen categorizes as "performance reviews," Relators claim they do not intend to exclude Janssen from using those exhibits for impeachment purposes and they only seek a ruling from the Court on whether Janssen can use them as part of its case in chief. (*Id*. at 11.) Finally, Relators contend that the "compliance documents" (DX2293-94 and DX2333) are responsive to Relators' Third Requests for Production Nos. 12 and/or 31 because "these documents reflect Janssen's efforts to comply with its obligations under its April 28, 2013 Corporate Integrity Agreement." (*Id*.)

In determining whether to exclude non-disclosed evidence, district courts must consider four factors: "(1) the prejudice or surprise of the party against whom the excluded evidence would

have been admitted; (2) the ability of the party to cure that prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or willfulness in failing to comply with a court order or discovery obligation." *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 148 (3d Cir. 2000).  In addition, the Court should also consider the party's explanation for failing to disclose as well as the importance of the excluded evidence, the latter of which is often the most significant factor.  *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 298 (3d Cir. 2012)

First, as to the six scientific studies, Relators, in reply, indicate that they do not seek to exclude DX1080 and DX1105 from trial because they were published after the Relevant Time Period.  (Relators Reply Br. at 10 n 2.)  As to the remaining four studies, Janssen contends that it produced exact or near-duplicates of the same.  (Janssen Opp'n Br. at 25.)  Accordingly, if the produced versions are equivalent to the unproduced ones, then there should be no prejudice to Janssen in being required to use the produced versions.  Permitting introduction of these exhibits, should they not be "near duplicates" or "exact," would result in prejudice to Relators.  The Court will therefore exclude DX1075, DX1089, DX1098, and DX1102 on the basis that they were not produced in discovery.

As to the performance reviews,  Janssen indicates that these documents "are only intended for impeachment purposes[.]" (Janssen Opp'n Br. at 26.)  Relators submit that they "do not seek to exclude Janssen from using those exhibits for impeachment purposes." (Relators Reply Br. at 11.)  Relators "only seek a ruling from the Court that Janssen cannot use these exhibits as trial exhibits in its case in chief.  (*Id.*)  Admission of this evidence into Janssen's case in chief will cause prejudice and surprise to Relators.  Relators were deprived of the opportunity to depose Janssen's witnesses about these documents.  To cure this prejudice would require the Court to

permit additional depositions which would delay the trial. Further, this case was filed almost ten years ago, having conducted several years of discovery. The Court will therefore exclude DX6073-74, DX6076, DX6079-83, and DX6085-88 from Janssen's case in chief but will permit the evidence as impeachment evidence only.

Finally, exhibits DX2293-94 and DX2333 will be excluded. These documents reflect Janssen's effort to comply with the April 28, 2013 CIA, and as set forth above, Janssen's compliance efforts are probative. Relators and their experts were not able to review and assess these documents. For Relators to cure this nondisclosure would require the Court to delay trial for Relators to fully review this evidence. The Court finds that is unfair and prejudicial to Relators for Janssen to have waited over three years to disclose these documents. Janssen will therefore be precluded from using DX2293-94 and DX2333 in its case in chief.

### 11. Whether Janssen Should Be Precluded from Taking Any "Trial Depositions" and/or From Presenting Trial Depositions or Remote Testimony at Trial

Finally, Relators contend Janssen seeks to present testimony from doctors and other witnesses through "trial deposition" or remotely. (Relators Moving Br. at 26.) Relators claim that Janssen's reasoning to excuse these witnesses from live testimony is because they live outside of New Jersey and have busy schedules. (*Id*.) In their Moving brief, Relators indicate that this issue is contemplated as a motion in limine in the Final Pretrial Order (ECF No. 315). Relators additionally contend that "the parties met and conferred on these issues on November 10 and will submit a joint five-page letter to the Court in due course." (*Id*. at 26 n.9.) The Court however, is not yet in receipt of such letter. The Court will therefore reserve on deciding this Motion until the parties have submitted their joint letter.

## V.    __CONCLUSION__

Accordingly, for the reasons stated herein, the Court will GRANT IN PART and DENY IN PART the Motions.[3]  An appropriate Order will follow.


Date: **June 28, 2023**

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**

---

[3] As a final, housekeeping matter, the Court notes that portions of this Opinion refer to certain documents and information that was placed under seal at the request of the parties. The Court has therefore instructed the Clerk's Office to place this Opinion under temporary seal, and will order the parties to meet and confer and advise as to whether they will be filing an appropriate motion to seal under Local Civil Rule 5.1 to permanently seal this Opinion,