1    **UNITED STATES DISTRICT COURT**
    **FOR THE DISTRICT OF NEW JERSEY**

2

3 _____

4  UNITED STATES OF AMERICA, et    CIVIL ACTION NUMBER:
   al,
       Plaintiffs,              3:12-cv-07758-ZNQ-JBD
5
       v.                      JURY TRIAL - VOLUME 23
6
   JOHNSON & JOHNSON, JANSSEN
7  PRODUCTS, L.P.
       Defendants.
8 _____
       Clarkson S. Fisher Building & U.S. Courthouse
9      402 East State Street
       Trenton, New Jersey  08608
10     June 13, 2024
       Commencing at 9:00 a.m.
11

12 **B E F O R E:**         THE HONORABLE ZAHID N. QURAISHI,
                       UNITED STATES DISTRICT JUDGE

13 **A P P E A R A N C E S:**

14     REESE MARKETOS
       BY:  PETE MARKETOS, ESQUIRE
15          JOSH RUSS, ESQUIRE
            ANDREW WIRMANI, ESQUIRE
16          ADAM SANDERSON, ESQUIRE
            WHITNEY WENDEL, ESQUIRE
17     750 N. Saint Paul Street, Suite 600
       Dallas, Texas 75201
18     For the Relators

19     SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
       BY:  ALLISON M. BROWN, ESQUIRE
20          GEOFFREY M. WYATT, ESQUIRE
            BRADLEY A. KLEIN, ESQUIRE
21     One Rodney Square
       920 King Street
22     Wilmington, Delaware
       For the Defendants
23
       Megan McKay-Soule, Official Court Reporter
24          Megan_McKay-Soule@njd.uscourts.gov
                  (690) 815-2319
25 Proceedings recorded by mechanical stenography; transcript
       produced by computer-aided transcription.

*United States District Court*
*District of New Jersey*

1    (PROCEEDINGS held in open court before The Honorable

2  ZAHID N. QURAISHI, United States District Judge, on June 13,

3  2024, at 9:07 a.m.)

4         THE DEPUTY COURT CLERK:  All rise.

5         THE COURT:  All right, folks.  You may be seated.

6  Good morning.  Let me get appearances from counsel, beginning

7  with the Relators.

8         MR. MARKETOS:  Good morning, Your Honor.

9  Pete Marketos for the Relators.

10         MR. RUSS:  Good morning.  Josh Russ for Relators.

11         MR. WIRMANI:  Andrew Wirmani for Relators, Judge.

12         MS. WENDEL:  Good morning.  Whitney Wendel for

13  Relators.

14         THE COURT:  All right.  Good morning, folks.

15         MS. BROWN:  Good morning, Your Honor.  Alli Brown for

16  Janssen.

17         MR. WYATT:  Good morning, Your Honor.  Geoff Wyatt

18  for Janssen.

19         MR. KLEIN:  Good morning, Your Honor.  Brad Klein for

20  Janssen.

21         THE COURT:  Good morning, folks.  Anything we need to

22  chat about before -- I do have a communication.  This is how

23  the day starts, so anything we need to talk about before I go

24  through this jury communication?

25         MR. MARKETOS:  No, Your Honor.  Thank you.

```
 1            THE COURT:  Ms. Brown?

 2            MS. BROWN:  No.  Thank you, Judge.

 3            THE COURT:  We just received Jury Communication

 4  Number 7.  Let me just read it.  I'm not sure it's really

 5  anything but logistics, but it states:  "If additional days

 6  are needed beyond today, a few jurors have other obligations

 7  and cannot do tomorrow (Friday) and would prefer to continue

 8  Monday.  Today we can go until 5 p.m."

 9            So I think the jurors are just telling me, look,

10  they're able to deliberate until 5:00.  They don't know if

11  they'll need more time than that, but if they do, they'd like

12  to reconvene Monday because of commitments for tomorrow.

13            I don't have any concern with that message.  One, I

14  don't even know if it will be moot if they can come to some

15  decision today.  If they can't, I'm more concerned about the

16  jurors, not us.  So if they want to give us all a day off and

17  they're willing to come back Monday to continue deliberations,

18  I don't really have a concern there.  Let me hear from both of

19  you.  Otherwise, I'm going to tell them this is fine.

20            MR. MARKETOS:  Fine by us.

21            MS. BROWN:  No concern, Your Honor.

22            THE COURT:  All right.  So I think they just wanted

23  to let us know.  I'm glad they have at least until 5:00 today,

24  which I think is a significant amount of time.

25            So with that, why don't we get the jurors in here so I
```

1  can excuse them so they can continue their deliberations.

2  We'll go from there.

3              THE DEPUTY COURT CLERK:  All rise.

4              (The jury enters the courtroom at 9:09 a.m.)

5              THE COURT:  Good morning, folks.  Everybody have a

6  seat.

7          Good morning, members of the jury.  Before I excuse you

8  for deliberations, I will just put on the record Jury

9  Communication Number 7, which reads:  "If additional days are

10  needed beyond today, a few jurors have other obligations and

11  cannot do tomorrow (Friday) and would prefer to continue

12  Monday.  Today we can go until 5 p.m."

13          That's absolutely fine.  One, I don't know if this

14  message will be moot, so why don't you continue with your

15  deliberations and we will know more by 5 p.m.  If you guys are

16  coming back in here at 5 p.m., I presume that you will

17  continue deliberations Monday morning at 9:00.  But why don't

18  we just wait to hear from you either at that time or some time

19  before.

20          With that, I will excuse you all to continue

21  deliberations, and thank you for being here promptly this

22  morning.

23              (The jury resumed deliberations at 9:10 a.m.)

24  folks, have a seat.  We're in recess until if, and when, we

25  hear back from the jurors.

1          MR. MARKETOS:  Thank you, Your Honor.

2          MS. BROWN:  Thank you, Your Honor.

3          (Court is in recess.)

4          THE DEPUTY COURT CLERK:  Please remain seated.

5          THE COURT:  All right, everyone.

6      We received Jury Communication Number 8, which reads:

7  "We would like the transcripts for Kim" -- I think it says

8  "Saltana," but we know who it is -- "Candice Long, Mike

9  Iacobellis, and Glenn Mattes."

10      So they're requesting the transcripts of those four

11  witnesses, Saladana, Long, Iacobellis, and Mattes.

12      My suggestion is the same as we've been doing, which is

13  I'm going to ask counsel to prepare those redacted transcripts

14  and if they're ready one at a time, or whenever they're ready,

15  just to provide them to the courtroom deputy.  And as soon as

16  they're ready, we will provide them to the jurors.  And in the

17  meantime, I'll instruct them to continue deliberating as we're

18  waiting for the transcripts.

19      Any objection to that process?  And if not, I'll bring

20  them in.

21          MR. MARKETOS:  No objection, Your Honor.

22          MS. BROWN:  No objection.  Thank you.

23          THE COURT:  All right.  Let's get the jurors in and

24  I'll let them know.

25          THE DEPUTY COURT CLERK:  All rise.

```
 1              (The jury enters the courtroom at 9:55 a.m.)

 2              THE COURT:  All right, folks.  Everybody have a seat.

 3   This will be brief.

 4              We received Jury Communication Number 8:  "We would

 5   like the transcripts for Kim Saladana, Candace Long, Mike

 6   Iacobellis, and Glenn Mattes."

 7              You all know what I'm going to respond.  We're going to

 8   provide those transcripts to you all.  I would ask you to just

 9   give us a little time because we do have to make those

10   redactions, and I would ask you, to the extent you can, to

11   continue deliberating on another subject while you're waiting

12   for these transcripts, and we will get them to you in short

13   time.

14              So with that, I'm going to return you back to the jury

15   room, but we want to keep a record of these responses, and I

16   appreciate your attention to them.

17              THE DEPUTY COURT CLERK:  All rise.

18              (Jury resumes deliberations at 9:55 a.m.)

19              THE COURT:  Folks, have a seat.

20              Just keep me posted.  You're going to get these to Kim

21   as soon as they're readily available or when they are.  Are

22   you guys going to be working in here, then?

23              MR. MARKETOS:  Yes, Your Honor.

24              MS. BROWN:  Yes.

25              THE COURT:  All right.  So just do what you need to
```

```
 1    do and let's get these transcripts.
 2          Kim, they'll get them to you, and we'll go from there.
 3            THE DEPUTY COURT CLERK:  Okay.
 4            (Court is in recess.)
 5            THE DEPUTY COURT CLERK:  Please remain seated.
 6            THE COURT:  Haven't seen you all in a while.  Good
 7    afternoon.  We received Jury Communication Number 9, so let
 8    me -- let me slowly read this, because there's two items, and
 9    then we will discuss, so -- and they're numbered.
10          Number 1:  "The jury understands that our findings are
11    not limited to all or none of the alleged claims and that we
12    can determine a portion of the claims we find by a
13    preponderance of the evidence true.  Correct?"
14          So that's the first question.
15          And then the second states:  "The jury recalls
16    Professor Shaked providing testimony detailing the number of
17    federal versus individual state claims.  Notwithstanding, we
18    are unable to locate that testimony or any exhibits associated
19    with that testimony.  Please direct us to where this
20    information is located."
21          So those are two fairly distinct questions.
22          So -- well, I'll tell you where I'm inclined to go.
23    I'm going to go with the same philosophy, although these are a
24    little bit different than the other instructions, and I'm
25    going to hear from both sides.
```

*United States District Court*
*District of New Jersey*

1    So I will tell you, in reviewing both the questions,

2  I'm inclined to answer question number 1 after reviewing the

3  jury instructions, and I'm inclined to, for question number 2,

4  direct them back to the evidence as opposed to trying to

5  assist them in what evidence they should be reviewing.

6    But let me hear from Relators first on -- why don't we

7  talk about number 1 first, okay?

8    Number 1 is their understanding of whether -- let me

9  just read this:  Their understanding that their findings are

10  not limited to all or none of the alleged claims, and that

11  they can determine a portion of the claims that they find by a

12  preponderance of the evidence true; is that correct?

13    So let me hear from Mr. Marketos first.  What is your

14  suggestion on how I respond to that?

15      MR. MARKETOS:  I think the answer is correct.

16      THE COURT:  Meaning yes?

17      MR. MARKETOS:  Yes.

18      THE COURT:  Okay.  And Ms. Brown?

19      MS. BROWN:  Mr. Wyatt.

20      THE COURT:  Mr. Wyatt?

21      MR. WYATT:  Yeah, I think it's correct, Your Honor.

22  I just don't under -- I'm not sure I understand exactly what

23  they're asking since it's framed in a somewhat general way.

24    If it's just -- if the question is, Can we decide

25  claim 1 and not claim 2, I think the answer to that is yes.

 1    If it's, you know, some subset of theories under claim 1 --

 2            THE COURT:  They're talking about false claims.

 3            MR. WYATT:  Yeah, so I just don't know though, right,

 4    like it could -- the Relators had like four or five theories

 5    of false claims, so I don't think the verdict form does allow

 6    them to return a partial response on that one, but maybe I'm

 7    missing something.

 8            THE COURT:  The way I read it, they're just saying,

 9    Are we limited to all or none of the alleged claims, or can we

10    determine a portion of the false claims if we find by a

11    preponderance of the evidence?  They're just asking whether

12    it's got to be an exact number or zero, or do we have the

13    ability to say, We believe these claims are false by a

14    preponderance of the evidence, and we have the right to choose

15    that number.

16            MR. MARKETOS:  That's right.

17            THE COURT:  And I think it's -- I will tell you, I'm

18    reviewing the jury instructions, too, right?  So, initially, I

19    will tell you my -- my take was to refer them back to

20    Instruction Number 28, which is number of false claims.

21        The problem is when I review that instruction, it does

22    not exactly answer the question that they're posing, and I can

23    see where they might come to that question.  If you look at

24    Instruction Number 28, it says, "If you find that Janssen

25    violated the False Claims Act, then you must also identify the

1  number of false or fraudulent claims that were submitted to

2  the United States."

3       Again -- and then it goes on to another paragraph.

4  What it doesn't say there is the question that they're asking.

5  So I'm inclined to respond "yes" to that first question.  I

6  don't think that's misleading.  I think that is consistent

7  with the law, and if anything, I'm just clarifying Instruction

8  Number 28.

9       So that's where I land on number one.

10      MR. WYATT:  Yeah.  I mean, I guess as long as there's

11  evidence in the record to support it, that would be correct.

12  Again, it's hard to evaluate that without knowing what they're

13  asking, but I agree with what the Court is saying.

14      THE COURT:  All right.  That's how I'm going to

15  respond to question number one.  My response is simply to be

16  yes.

17      Number two, let me hear from Mr. Marketos first on

18  number two.

19      MR. MARKETOS:  Could you read it back to me,

20  Your Honor?

21      THE COURT:  I can.  And let me do this a little bit

22  slower, and I apologize for that.  I probably should have made

23  copies, but my practice is simply to read these communications

24  to you all.

25      So number two reads:  "The jury recalls

1    Professor Shaked providing testimony detailing the number of

2    federal versus individual state claims.  Notwithstanding, we

3    are unable to locate that testimony or any exhibits associated

4    with that testimony.  Please direct us to where this

5    information is located."

6         So that's -- it's a request.  It's not a question.

7    They're -- they're indicating that they recall certain

8    testimony from Dr. Shaked versus talking about the number of

9    federal versus state -- individual state claims.

10        MR. MARKETOS:  That's right.

11        THE COURT:  They're having some trouble, it appears,

12   to locate that testimony and any exhibits associated with that

13   testimony, and they're asking the Court to direct them to

14   where that evidence is, which I am not inclined to do.

15        So I'm asking you:  What is your response to that?

16        MR. MARKETOS:  You're right not to be inclined to do

17   it.

18        THE COURT:  I mean, for me, it's almost like I'm

19   stepping into the shoes of the jurors, and I wouldn't -- and

20   by the way, if this question was reversed, and I want to be

21   very clear, if it was, We recall Dr. Jena stating A, B, and,

22   C, tell me where that testimony and the exhibits associated

23   with that testimony are.

24        I would not direct a jury to focus.  Their job is to

25   locate and review the evidence before them, and if they're

1   having trouble finding it, then they have to look harder, or

2   maybe their recollection isn't accurate, right?  Because all

3   they're telling me is they recall some testimony and they

4   can't find the evidence to support their recollection.

5          So I just want to be clear.  So it sounds like you

6   agree with me, Mr. Marketos?

7          MR. MARKETOS:  Yeah.  I don't -- I don't think

8   Your Honor can direct them to a portion of the record.  The

9   answer to that is -- the answer to it is it's a combination of

10  a document and testimony that was elicited, including elicited

11  from Dr. Jena, about Professor Shaked's breakdown.

12         And so there's a -- there are documents in evidence,

13  and we put them up during closing.  So that's the issue, but

14  the question is how do you -- what to do about that.

15         I think Your Honor's right.  I don't think -- I think

16  it would be -- I don't think the Court can direct them to

17  specific evidence, and even though it would be favorable to --

18         THE COURT:  I appreciate that.  And, Mr. Wyatt, I

19  presume you agree?

20         MR. WYATT:  Yeah.  I agree and agree with Your Honor

21  that that's sort of a general proposition.

22         THE COURT:  Let me ask you all this though:  How do I

23  respond to it?  So I'm basically just taking notes because

24  I -- I also want to avoid getting another question like this.

25  So I guess I was going to -- let me just -- let me just word

 1    it for you.

 2         With respect to request number two, my response is I

 3    will direct you back to the evidence presented and it is for

 4    you and you alone to review that evidence.

 5         MR. MARKETOS:  Yeah.  Review the evidence you've been

 6    provided, I think, is the -- is the right response.

 7         THE COURT:  To review --  sorry?

 8         MR. MARKETOS:  All the evidence you have been

 9    provided.

10         THE COURT:  All the evidence you have been provided.

11    Let me just read that again.  Number one, yes.

12         Number two, my response is, I will direct you to the

13    evidence presented and it is for you and you alone to review

14    all the evidence that you have been provided.

15         Any objection to that?

16         MR. WYATT:  Well, sort of, only because they haven't

17    been provided all testimony.  They've been provided some of

18    it, so I think I would say all the evidence available to you.

19         THE COURT:  I don't have any objection to that.  The

20    evidence available to you?  Is there -- I mean, I feel like

21    we're just --

22         MR. WYATT:  Or just all the evidence.  But other than

23    that, that sounds right to me.

24         THE COURT:  All right.

25         MR. MARKETOS:  I think it was aptly stated before.

1          THE COURT:  Let me just read it, and maybe it's

2     simply this way.  My response is:  I will direct you to the

3     evidence presented and it is for and you alone to review all

4     the evidence.

5          I don't see how that's misleading.  I mean, all the

6     evidence is all the evidence.  I'm not limiting it to

7     anything.  They know what the evidence is that was presented

8     at trial.  To the extent they requested some transcripts or

9     not, we don't need to differentiate that.

10          I think I'm just going to say, You have to review the

11     evidence.  I think it's going to be pretty clear in how I say

12     it and what I say, the meaning behind it, which is they have

13     to do their jobs and we can't do that for them.

14          MR. MARKETOS:  Yes.  I think we're all on the same

15     page, Your Honor.

16          THE COURT:  Okay.  All right.  Then, folks, let me

17     get them in here because they still have about 25 minutes left

18     of deliberations, and I want them to continue at least until

19     they're done, but...

20          Kim, do you mind?  Thanks.

21          THE DEPUTY COURT CLERK:  All rise.

22          (The jury enters the courtroom at 4:36 p.m.)

23          THE COURT:  Folks, everybody have a seat.

24          Regarding Jury Communication Number 9, I'll read the

25     two -- well, the question and request, and then I'll respond

1    for you folks and hopefully give you a little more time to

2    deliberate.

3         With respect to number one, "The jury understands that

4    our findings are not limited to all or none of the alleged

5    claims and that we can determine a portion of the claims we

6    find by a preponderance of the evidence true.  Correct?"

7         My response to you on that question is "yes."

8         On number two, it reads:  "The jury recalls

9    Professor Shaked providing testimony detailing the number of

10   federal versus individual state claims.  Notwithstanding, we

11   are unable to locate that testimony or any exhibit associated

12   with that testimony.  Please direct us to where this

13   information is located."

14        My response to request number two is I will direct you

15   to the evidence presented and it is for you and you alone to

16   review all the evidence.

17        So those are my responses to both one and two, and with

18   that, folks, I appreciate it.  I'm going to let you back to

19   continue with your deliberations.

20             THE DEPUTY COURT CLERK:  All rise.

21             (The jury resumed deliberations at 4:37 p.m.)

22             THE COURT:  All right, folks.  Why don't you all have

23   a seat.  You may want to stick around.  We only have about

24   25 minutes left before, I think, they need to break for the

25   day.  We don't even know whether we're going to get another

1    communication other than whether they're done.  Why don't you

2    all stick around, and we'll wait and see.

3              (A short recess occurred.)

4              THE DEPUTY COURT CLERK:  Please remain seated.

5              THE COURT:  All right.  Folks, we received Jury

6    Communication Number 10.  It reads "We have a verdict."

7         So, Mr. Marketos, anything before I get the jurors in?

8              MR. MARKETOS:  No, Your Honor.

9              THE COURT:  Ms. Brown?

10             MS. BROWN:  No.  Thank you, Your Honor.

11             THE COURT:  All right.  So, Kim, why don't we get

12   these folks.

13             THE DEPUTY COURT CLERK:  Okay.

14             THE COURT:  Then we'll see what's what.

15             THE DEPUTY COURT CLERK:  All rise.

16        (The jury enters the courtroom at 5:03 p.m.)

17             THE COURT:  All right.  Folks, thank you.  Everybody

18   have a seat.

19        I received Jury Communication Number 10 which reads,

20   "We have a verdict."

21        Before I get to the verdict, I want to take a roll call

22   on the record for each juror, 1 through 8.  I'm going to call

23   the juror number, and if you can just state your number and

24   "present" so we have a record that you're in the courtroom.

25             Juror number 1?

```
 1          JUROR:  Here.  Juror number 1 here.

 2          THE COURT:  Juror number 2?

 3          JUROR:  Juror number 2 here.

 4          JUROR:  Juror number 3 here.

 5          JUROR:  Juror number 4 here.

 6          JUROR:  Number 5 here.

 7          JUROR:  Juror number 6 here.

 8          JUROR:  Juror number 7 here.

 9          JUROR:  Juror number 8 here.

10          THE COURT:  All right.  Thank you.

11      Mr. Foreperson, would you please rise at this time.

12      Has the jury reached a verdict?

13          JUROR:  Yes, it has, Your Honor.

14          THE COURT:  Is the verdict unanimous?

15          JUROR:  Yes, it is, Your Honor.

16          THE COURT:  At this time I'm going to ask my

17  courtroom deputy just to come over and grab the verdict sheet

18  so I can inspect it, okay?

19          At this time, Kim -- I'm going to return the verdict

20  sheet to you, Mr. Foreperson.

21          All right.  I'm going to ask you at this time -- I'm

22  going to read through the questions.  I'm going to ask you to

23  give the jurors' responses on the verdict sheet, and I'm going

24  to go through each question one by one in order, okay?

25          In the matter of the United States of America, Jessica
```

 1    Penelow versus Janssen Products LP, the docket number is

 2    12-7758, the verdict sheet read s:  "With respect to question

 3    1, which asked did the Relators prove by a preponderance of

 4    the evidence that Janssen violated the False Claims Act by

 5    unlawfully promoting Prezista or Intelence?"

 6        How do you find?

 7            JUROR:  We find they did, Your Honor.

 8            THE COURT:  All right.  With respect to question 2,

 9    which asks, "What number of false claims, if any, did Relators

10    prove that Janssen caused to be submitted as a result of any

11    False Claims Act violations you found in question 1," how did

12    you find with respect to the number of false claims?

13            JUROR:  We found for 159,574.

14            THE COURT:  And with respect to question 3, which

15    asks, "What amount of damages, if any, did Relators prove by a

16    preponderance of the evidence that the United States sustained

17    as a result of any False Claims Act violations you found in

18    question 1," how did you find respect to that?

19            THE WITNESS:  We found for $120,004,736.

20            THE COURT:  With respect to question 4, which asks,

21    "Did Relators prove by a preponderance of the evidence that

22    Janssen violated the federal False Claims Act by violating the

23    Anti-Kickback Statute," how do you find?

24            THE WITNESS:  We found no.

25            THE COURT:  I'm going to question 7.

1    With respect to question 7, it -- well, I presume with

2  question 5 then, your number is -- what is the number for

3  question 5, zero?

4         JUROR:  Yes, Your Honor.

5         THE COURT:  With respect to question 6, the number is

6  zero?

7         JUROR:  Yes, Your Honor.

8         THE COURT:  All right.  Moving on to question 7, it

9  asks, "Did Relators prove by a preponderance of the evidence

10  that Janssen violated the state False Claims Acts of any

11  states identified in the verdict form by unlawfully promoting

12  Prezista or Intelence?"

13     I'll go through each of the states listed in the

14  verdict form one at a time, and for each state, please tell me

15  if the jury found either yes or no for that particular state.

16     How did you find for California?

17         JUROR:  Yes.

18         THE COURT:  How did you find for Colorado?

19         JUROR:  Yes.

20         THE COURT:  How did you find for Connecticut?

21         JUROR:  Yes.

22         THE COURT:  How did you find for Delaware?

23         JUROR:  Yes.

24         THE COURT:  How did the jury find for Florida?

25         JUROR:  Yes.

```
1          THE COURT:  How did the jury find for Georgia?

2          JUROR:  Yes.

3          THE COURT:  How did jury find for Hawaii?

4          JUROR:  Yes.

5          THE COURT:  How did the jury find for Illinois?

6          JUROR:  Yes.

7          THE COURT:  How did the jury find for Indiana?

8          JUROR:  Yes.

9          THE COURT:  How did the jury find for Iowa?

10         JUROR:  Yes.

11         THE COURT:  How did the jury find for Louisiana?

12         JUROR:  Yes.

13         THE COURT:  How did the jury find for Massachusetts?

14         JUROR:  Yes.

15         THE COURT:  How did the jury find for Michigan?

16         JUROR:  Yes.

17         THE COURT:  How did the jury find for Minnesota?

18         JUROR:  Yes.

19         THE COURT:  How did the jury find for Montana?

20         JUROR:  Yes.

21         THE COURT:  How did the jury find for Nevada?

22         JUROR:  Yes.

23         THE COURT:  How did the jury find for New Jersey?

24         JUROR:  Yes.

25         THE COURT:  How did the jury find for New Mexico?
```

1       JUROR:  Yes.

2       THE COURT:  How did the jury find for New York?

3       JUROR:  Yes.

4       THE COURT:  How did the jury find for North Carolina?

5       JUROR:  Yes.

6       THE COURT:  How did the jury find for Oklahoma?

7       JUROR:  Yes.

8       THE COURT:  How did the jury find for Rhode Island?

9       JUROR:  Yes.

10      THE COURT:  How did the jury find for Tennessee?

11      JUROR:  Yes.

12      THE COURT:  How did jury find for Texas?

13      JUROR:  Yes.

14      THE COURT:  How find jury find for Virginia?

15      JUROR:  Yes.

16      THE COURT:  How did the jury find for Washington?

17      JUROR:  Yes.

18      THE COURT:  How did the jury find for the District of

19 Columbia?

20      JUROR:  Yes.

21      THE COURT:  With respect to question 8, which asks,

22 "What amount of damages, if any, did Relators prove by a

23 preponderance of the evidence that the states sustained as

24 result of any violations you found in question 7," how did you

25 find?

```
1            JUROR:  We found for the damage in $30,001,184.

2            THE COURT:  Question 9 asks, "Did Relators prove by a

3    preponderance of the evidence that Janssen violated the

4    states' False Claims Acts of any of the states identified in

5    the verdict form by violating the Anti-Kickback Statute?"

6            I'll go through each of the states listed in the

7    verdict form one at a time and for each state, please tell me

8    if the jury found either "yes" or "no" for that particular

9    state.

10           How did the jury find for California?

11              JUROR:  No.

12           THE COURT:  How did the jury find for Colorado?

13              JUROR:  No.

14           THE COURT:  How did the jury for Connecticut?

15              JUROR:  No.

16           THE COURT:  How did the jury find for Delaware?

17              JUROR:  No.

18           THE COURT:  How did the jury find for Florida?

19              JUROR:  No.

20           THE COURT:  How did the jury find for Georgia?

21              JUROR:  No.

22           THE COURT:  How did the jury find for Hawaii?

23              JUROR:  No.

24           THE COURT:  How did the jury find for Illinois?

25              JUROR:  No.
```

1          THE COURT:  How did the jury find for Illinois?

2          JUROR:  No.

3          THE COURT:  How did the jury find for Iowa?

4          JUROR:  No.

5          THE COURT:  How did the jury find for Louisiana?

6          JUROR:  No.

7          THE COURT:  How did the jury find for Massachusetts?

8          JUROR:  No.

9          THE COURT:  How did the jury find for Michigan?

10         JUROR:  No.

11         THE COURT:  How did the jury find for Minnesota?

12         JUROR:  No.

13         THE COURT:  How did the jury find for Montana?

14         JUROR:  No.

15         THE COURT:  How did the jury find for Nevada?

16         JUROR:  No.

17         THE COURT:  How did the jury find for New Jersey?

18         JUROR:  No.

19         THE COURT:  How did the jury find for New Mexico?

20         JUROR:  No.

21         THE COURT:  How did the jury find for New York?

22         JUROR:  No.

23         THE COURT:  How did the jury find for North Carolina?

24         JUROR:  No.

25         THE COURT:  How did the jury find for Oklahoma?

1          JUROR:  No.

2          THE COURT:  How did the jury find for Rhode Island?

3          JUROR:  No.

4          THE COURT:  How did the jury find for find for

5     Tennessee?

6          JUROR:  No.

7          THE COURT:  How did the jury find for Texas?

8          JUROR:  No.

9          THE COURT:  How did the jury find for Virginia?

10         JUROR:  No.

11         THE COURT:  And how did the jury find for Washington?

12         JUROR:  No.

13         THE COURT:  Lastly, how did the jury find for the

14    District of Columbia?

15         JUROR:  No.

16         THE COURT:  All right.  With respect to question 10,

17    the number is zero?

18         JUROR:  Yes, Your Honor.

19         THE COURT:  All right.  Now, I know the parties may

20    not have requested it, but it's my practice to poll the

21    jurors.

22         So I'm going to poll the jury to ensure that this is,

23    in fact, a unanimous verdict.  I'm going to call on each of

24    the jurors and then one at a time I'm going to ask you if the

25    verdict -- if your verdict is the verdict that I just -- that

```
 1   was just read in open court.
 2          Juror number 1, is this your verdict?
 3            JUROR:  Yes.
 4            THE COURT:  Juror number 2, is this your verdict?
 5            JUROR:  Yes.
 6            THE COURT:  Juror number 3, is this your verdict?
 7            JUROR:  Yes.
 8            THE COURT:  Juror number 4, is this your verdict?
 9            JUROR:  Yes.
10            THE COURT:  Juror number 5, is this your verdict?
11            JUROR:  Yes.
12            THE COURT:  Juror number 6, is this your verdict?
13            JUROR:  Yes.
14            THE COURT:  Juror number 7, is this your verdict?
15            JUROR:  Yes.
16            THE COURT:  Juror number 8, is this your verdict?
17            JUROR:  Yes.
18            THE COURT:  All right.  Counsel, do I need to see you
19   at sidebar before I excuse the jurors?  Anything we need to
20   speak about before I dismiss them to the jury room?
21            MR. MARKETOS:  No, Your Honor.
22            MS. BROWN:  No, Your Honor.
23            THE COURT:  All right.  Folks, briefly, I do want to
24   thank you again for your service.  I know this has been a long
25   couple of weeks.  I know there were several claims for you to
```

```
 1   view, so I'm going to dismiss the jurors at this time from the

 2   trial.

 3         I will say that if for any of you, if you have a few

 4   minutes before you leave the courthouse, I would be happy to

 5   speak with you in chambers, but if you are leaving the

 6   courthouse, you need to go somewhere, do not feel that this is

 7   required.  But if you have a few moments, I need to speak with

 8   the lawyers, and then I'd like to meet with you briefly before

 9   you leave the courthouse, if you have the time.

10         So with that, I'm going to excuse the jurors.  Thank

11   you again for your service.

12            THE DEPUTY COURT CLERK:  All rise.  All rise.

13            (Jury dismissed from service at 5:13 p.m.)

14            THE COURT:  Folks, have a seat.

15         All right.  Do we need to do anything today?  I'm sure

16   there are going to be things that we need to address, but,

17   Mr. Marketos, let me know, is there anything that we need to

18   address today or anything that's worth coming -- besides the

19   Rule 50 motion?  I understand that, but are there other issues

20   that we are going to need to address, now that we have the

21   verdict?

22            MR. MARKETOS:  Not for purposes of the --

23            THE COURT:  Sorry.

24            MR. MARKETOS:  -- Relators.  Not for our purposes,

25   Your Honor.  I was only going to ask what your practice is
```

```
 1   with respect to permitting us to speak with the jurors or
 2   permitting them to speak with us?
 3           THE COURT:  I usually do not allow that practice.  So
 4   is that something that's being requested?  I will tell you
 5   just -- when I speak with them, just so you're clear, I speak
 6   with them about process.
 7           In fact, I tell them at the outset, I will not discuss
 8   this case at all.  It's really more about their process as
 9   jurors, are there things that we can do better with the
10   process of them serving as jurors?  Are there things that we
11   need to do better as far as moving the case for them?  Are
12   there issues with the deliberations room, with how they're
13   reviewing evidence?
14           It's pretty administrative.  I don't have any
15   discussions with them about counsel or the case.  That's been
16   my practice.  I don't want to have any interference with these
17   jurors post-verdict, and that's been my practice.
18           MR. MARKETOS:  I understand that, Your Honor.
19           THE COURT:  Do you guys want me to ask them something
20   about attorney performance or counsel performance?
21           MR. MARKETOS:  No.  No, I don't want to ask about us,
22   Your Honor.  It is extremely helpful to the process to learn
23   from the jurors, if they so choose.  Maybe would they be
24   permitted to contact us in the future?
25           THE COURT:  Yeah.  I don't prohibit jurors from
```

1    discussing the case now that they've given a verdict, but I'm

2    not going to coordinate that for you all.

3            MR. MARKETOS:  No, no.  I just meant can they be

4    informed that they're free to contact us, if they so desire?

5            THE COURT:  I'll let them know that they're free to

6    speak about the case to anyone, including you all now that the

7    case is over.  I don't have any objection to that.  I just

8    don't like to be involved in that process.

9            MR. MARKETOS:  Thank you, Your Honor.

10           THE COURT:  And I don't want to -- okay.

11       Ms. Brown, anything that we need to speak about today?

12    And I'm sure there are other -- or Mr. Wyatt?  I know there

13    may be some issues to address posttrial, but I don't know if

14    we need to address something before I let you guys go home for

15    the day.  I'm happy to hear from you.

16           MR. WYATT:  I don't think there's anything we need to

17    address today.  I'll just have questions about the timing and

18    the length of the Rule 50 briefing, but I think we can take

19    that up at another time.

20           THE COURT:  Yeah.  I mean, look, you can -- I mean,

21    correct me if I'm wrong, because I'm sure you folks have

22    checked it, but it's, what, 28 days in the rule to file the

23    motion?

24           MR. WYATT:  28 days following judgment.

25           THE COURT:  Following the judgment.  So, I mean, I

1    don't know what -- is there some -- are you looking to do a

2    hefty briefing on this or --

3            MR. WYATT:  Yeah, it will be a significant brief,

4    Your Honor.  I think we'll definitely need an extension from

5    the page limit.

6            THE COURT:  All right.  Why don't you do this then:

7    I mean, make the request.  I mean, take a look at what you're

8    going to be doing first in the brief before you make the

9    request.

10           MR. WYATT:  Yes.

11           THE COURT:  But if you really believe that you need

12   it, I'm not necessarily going to curtail that for you, but you

13   guys can do that in short time.  You can just file a letter on

14   the docket saying you're requesting an extension of the page

15   limitation, and I'm inclined to grant that.

16       But I'd like you to at least do your due diligence

17   first before you ask it prematurely.

18           MR. WYATT:  We'll do that, Your Honor.

19           THE COURT:  What else?  Anything else, folks?

20           MR. MARKETOS:  That means we don't need to be here on

21   Monday, Your Honor?

22           THE COURT:  That is correct.

23           MR. MARKETOS:  I know you're going to miss us, and

24   Megan especially, but we haven't seen our families in a month

25   and a half, so we're going to make sure we didn't --

1          THE COURT:  There's no reason to come back.  I mean,

2     look, I didn't know if we would get a verdict today or Monday,

3     but it sounds like they were close based on where they were.

4          But as far as I'm concerned, folks, we're adjourned.

5     And, again, I've already put this on the record, but I

6     appreciate all your efforts during the trial.  And it was a

7     partial verdict, so maybe everybody got a piece of this.

8          So that's all I can tell you.

9          So with that, anything furthers from Relators?

10          MR. MARKETOS:  Just thank you from us, Your Honor,

11     and this is again not kissing up, but the punctuality, the way

12     that the Court was run, literally walking through the door at

13     8:00 or 9:00, taking breaks within ten minutes is like nothing

14     I've ever seen before.

15          THE COURT:  I appreciate that.

16          MR. MARKETOS:  It was run like the most efficient

17     courtroom that I've been in.

18          THE COURT:  I appreciate that.  I do.

19          MR. MARKETOS:  So thank you for that.

20          THE COURT:  Ms. Brown, anything further from

21     Janssen Products?

22          MS. BROWN:  No.  Thank you as well, Your Honor, very

23     much and your staff for all the work over the last month and a

24     half.  We appreciate it.

25          THE COURT:  All right.  It was a pleasure having all

1    of you in the courtroom.

2           So with that, go see your families, enjoy the weekend,

3    and I'm sure we'll be in touch soon, so be well.

4           MS. BROWN:  Thank you, Your Honor.

5           MR. MARKETOS:  Thank you, Your Honor.

6           MR. KLEIN:  Thank you, Your Honor.

7           MR. WYATT:  Thank you, Your Honor.

8           THE DEPUTY COURT CLERK:  All rise.

9           (Court concludes at 5:18 p.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              FEDERAL OFFICIAL COURT REPORTER'S CERTIFICATE.

2              - - - - - - - - - - - - - - - - - - - - - -

3

4      I certify that the foregoing is a correct transcript from

5  the record of proceedings in the above-entitled matter.

6

7

8      I

9

10

11  /S/ Megan McKay-Soule, RDR, CRR     June 13, 2024

12          Court Reporter                          Date

13

14

15

16

17

18

19

20

21

22

23

24

25

**$**

**$120,004,736** [1] - 17:19
**$30,001,184** [1] - 21:1

**/**

**/S** [1] - 31:11

**1**

**1** [13] - 6:10, 7:2, 7:7, 7:8, 7:25, 8:1, 15:22, 15:25, 16:1, 17:3, 17:11, 17:18, 24:2
**10** [3] - 15:6, 15:19, 23:16
**12-7758** [1] - 17:2
**13** [2] - 1:2, 31:11
**159,574** [1] - 17:13

**2**

**2** [6] - 7:3, 7:25, 16:2, 16:3, 17:8, 24:4
**2024** [2] - 1:3, 31:11
**25** [2] - 13:17, 14:24
**28** [5] - 8:20, 8:24, 9:8, 27:22, 27:24

**3**

**3** [3] - 16:4, 17:14, 24:6

**4**

**4** [3] - 16:5, 17:20, 24:8
**4:36** [1] - 13:22
**4:37** [1] - 14:21

**5**

**5** [8] - 2:8, 3:12, 3:15, 3:16, 16:6, 18:2, 18:3, 24:10
**50** [2] - 25:19, 27:18
**5:00** [2] - 2:10, 2:23
**5:03** [1] - 15:16
**5:13** [1] - 25:13
**5:18** [1] - 30:9

**6**

**6** [3] - 16:7, 18:5, 24:12

**7**

**7** [8] - 2:4, 3:9, 16:8, 17:25, 18:1, 18:8, 20:24, 24:14

**8**

**8** [6] - 4:6, 5:4, 15:22, 16:9, 20:21, 24:16
**8:00** [1] - 29:13

**9**

**9** [3] - 6:7, 13:24, 21:2
**9:00** [2] - 3:17, 29:13
**9:07** [1] - 1:3
**9:09** [1] - 3:4
**9:10** [1] - 3:23
**9:55** [2] - 5:1, 5:18

**A**

**a.m** [5] - 1:3, 3:4, 3:23, 5:1, 5:18
**ability** [1] - 8:13
**able** [1] - 2:10
**above-entitled** [1] - 31:5
**absolutely** [1] - 3:13
**accurate** [1] - 11:2
**Act** [5] - 8:25, 17:4, 17:11, 17:17, 17:22
**Acts** [2] - 18:10, 21:4
**additional** [2] - 2:5, 3:9
**address** [6] - 25:16, 25:18, 25:20, 27:13, 27:14, 27:17
**adjourned** [1] - 29:4
**administrative** [1] - 26:14
**afternoon** [1] - 6:7
**agree** [6] - 9:13, 11:6, 11:19, 11:20
**alleged** [4] - 6:11, 7:10, 8:9, 14:4
**Alli** [1] - 1:15
**allow** [2] - 8:5, 26:3
**almost** [1] - 10:18
**alone** [4] - 12:4, 12:13, 13:3, 14:15
**America** [1] - 16:25
**amount** [3] - 2:24, 17:15, 20:22
**Andrew** [1] - 1:11
**answer** [6] - 7:2, 7:15, 7:25, 8:22, 11:9
**Anti** [2] - 17:23, 21:5
**Anti-Kickback** [2] -

17:23, 21:5
**apologize** [1] - 9:22
**appearances** [1] - 1:6
**appreciate** [5] - 5:16, 11:18, 14:18, 29:6, 29:15, 29:18, 29:24
**aptly** [1] - 12:25
**assist** [1] - 7:5
**associated** [5] - 6:18, 10:3, 10:12, 10:22, 14:11
**attention** [1] - 5:16
**attorney** [1] - 26:20
**available** [3] - 5:21, 12:18, 12:20
**avoid** [1] - 11:24

**B**

**based** [1] - 29:3
**beginning** [1] - 1:6
**behind** [1] - 13:12
**better** [2] - 26:9, 26:11
**beyond** [2] - 2:6, 3:10
**bit** [2] - 6:24, 9:21
**Brad** [1] - 1:19
**break** [1] - 14:24
**breakdown** [1] - 11:11
**breaks** [1] - 29:13
**brief** [3] - 5:3, 28:3, 28:8
**briefing** [2] - 27:18, 28:2
**briefly** [2] - 24:23, 25:8
**bring** [1] - 4:19
**BROWN** [11] - 1:15, 2:2, 2:21, 4:2, 4:22, 5:24, 7:19, 15:10, 24:22, 29:22, 30:4
**Brown** [6] - 1:15, 2:1, 7:18, 15:9, 27:11, 29:20
**but..** [1] - 13:19

**C**

**California** [2] - 18:16, 21:10
**Candace** [1] - 5:5
**Candice** [1] - 4:8
**cannot** [2] - 2:7, 3:11
**Carolina** [2] - 20:4, 22:23
**case** [6] - 26:8, 26:11, 26:15, 27:1, 27:6, 27:7
**caused** [1] - 17:10
**certain** [1] - 10:7
**CERTIFICATE** [1] -

31:1
**certify** [1] - 31:4
**chambers** [1] - 25:5
**chat** [1] - 1:22
**checked** [1] - 27:22
**choose** [2] - 8:14, 26:23
**claim** [3] - 7:25, 8:1
**Claims** [7] - 8:25, 17:4, 17:11, 17:17, 17:22, 18:10, 21:4
**claims** [20] - 6:11, 6:12, 6:17, 7:10, 7:11, 8:2, 8:5, 8:9, 8:10, 8:13, 8:20, 9:1, 10:2, 10:9, 14:5, 14:10, 17:9, 17:12, 24:25
**clarifying** [1] - 9:7
**clear** [4] - 10:21, 11:5, 13:11, 26:5
**CLERK** [14] - 1:3, 3:3, 4:4, 4:25, 5:17, 6:3, 6:5, 13:21, 14:20, 15:4, 15:13, 15:15, 25:12, 30:8
**close** [1] - 29:3
**closing** [1] - 11:13
**Colorado** [2] - 18:18, 21:12
**Columbia** [2] - 20:19, 23:14
**combination** [1] - 11:9
**coming** [2] - 3:16, 25:18
**commitments** [1] - 2:12
**communication** [3] - 1:22, 1:24, 15:1
**Communication** [8] - 2:3, 3:9, 4:6, 5:4, 6:7, 13:24, 15:6, 15:19
**communications** [1] - 9:23
**concern** [3] - 2:13, 2:18, 2:21
**concerned** [2] - 2:15, 29:4
**concludes** [1] - 30:9
**Connecticut** [2] - 18:20, 21:14
**consistent** [1] - 9:6
**contact** [2] - 26:24, 27:4
**continue** [11] - 2:7, 2:17, 3:1, 3:11, 3:14, 3:17, 3:20, 4:17, 5:11, 13:18, 14:19
**coordinate** [1] - 27:2

**copies** [1] - 9:23
**correct** [9] - 6:13, 7:12, 7:15, 7:21, 9:11, 14:6, 27:21, 28:22, 31:4
**counsel** [5] - 1:6, 4:13, 24:18, 26:15, 26:20
**couple** [1] - 24:25
**Court** [8] - 4:3, 6:4, 9:13, 10:13, 11:16, 29:12, 30:9, 31:12
**court** [2] - 1:1, 24:1
**COURT** [147] - 1:4, 1:5, 1:14, 1:21, 2:1, 2:3, 2:22, 3:3, 3:5, 3:24, 4:4, 4:5, 4:23, 4:25, 5:2, 5:17, 5:19, 5:25, 6:3, 6:5, 6:6, 7:16, 7:18, 7:20, 8:2, 8:8, 8:17, 9:14, 9:21, 10:11, 10:18, 11:18, 11:22, 12:7, 12:10, 12:19, 12:24, 13:1, 13:16, 13:21, 13:23, 14:20, 14:22, 15:4, 15:5, 15:9, 15:11, 15:13, 15:14, 15:15, 15:17, 16:2, 16:10, 16:14, 16:16, 17:8, 17:14, 17:20, 17:25, 18:5, 18:8, 18:18, 18:20, 18:22, 18:24, 19:1, 19:3, 19:5, 19:7, 19:9, 19:11, 19:13, 19:15, 19:17, 19:19, 19:21, 19:23, 19:25, 20:2, 20:4, 20:6, 20:8, 20:10, 20:12, 20:14, 20:16, 20:18, 20:21, 21:2, 21:12, 21:14, 21:16, 21:18, 21:20, 21:22, 21:24, 22:1, 22:3, 22:5, 22:7, 22:9, 22:11, 22:13, 22:15, 22:17, 22:19, 22:21, 22:23, 22:25, 23:2, 23:4, 23:7, 23:9, 23:11, 23:13, 23:16, 23:19, 24:4, 24:6, 24:8, 24:10, 24:12, 24:14, 24:16, 24:18, 24:23, 25:12, 25:14, 25:23, 26:3, 26:19, 26:25, 27:5, 27:10, 27:20, 27:25, 28:6, 28:11, 28:19, 28:22, 29:1, 29:15, 29:18, 29:20, 29:25, 30:8,

31:1
**courthouse** [3] - 25:4, 25:6, 25:9
**courtroom** [9] - 3:4, 4:15, 5:1, 13:22, 15:16, 15:24, 16:17, 29:17, 30:1
**CRR** [1] - 31:11
**curtail** [1] - 28:12

**D**

**damage** [1] - 21:1
**damages** [2] - 17:15, 20:22
**Date** [1] - 31:12
**days** [4] - 2:5, 3:9, 27:22, 27:24
**decide** [1] - 7:24
**decision** [1] - 2:15
**definitely** [1] - 28:4
**Delaware** [2] - 18:22, 21:16
**deliberate** [2] - 2:10, 14:2
**deliberating** [2] - 4:17, 5:11
**deliberations** [12] - 2:17, 3:1, 3:8, 3:15, 3:17, 3:21, 3:23, 5:18, 13:18, 14:19, 14:21, 26:12
**DEPUTY** [14] - 1:4, 3:3, 4:4, 4:25, 5:17, 6:3, 6:5, 13:21, 14:20, 15:4, 15:13, 15:15, 25:12, 30:8
**deputy** [2] - 4:15, 16:17
**desire** [1] - 27:4
**detailing** [3] - 6:16, 10:1, 14:9
**determine** [4] - 6:12, 7:11, 8:10, 14:5
**different** [1] - 6:24
**differentiate** [1] - 13:9
**diligence** [1] - 28:16
**direct** [12] - 6:19, 7:4, 10:4, 10:13, 10:24, 11:8, 11:16, 12:3, 12:12, 13:2, 14:12, 14:14
**discuss** [2] - 6:9, 26:7
**discussing** [1] - 27:1
**discussions** [1] - 26:15
**dismiss** [2] - 24:20, 25:1
**dismissed** [1] - 25:13
**distinct** [1] - 6:21

**District** [3] - 1:2, 20:18, 23:14
**docket** [2] - 17:1, 28:14
**document** [1] - 11:10
**documents** [1] - 11:12
**done** [2] - 13:19, 15:1
**door** [1] - 29:12
**Dr** [3] - 10:8, 10:21, 11:11
**due** [1] - 28:16
**during** [2] - 11:13, 29:6

**E**

**efficient** [1] - 29:16
**efforts** [1] - 29:6
**either** [3] - 3:18, 18:15, 21:8
**elicited** [2] - 11:10
**enjoy** [1] - 30:2
**ensure** [1] - 23:22
**enters** [4] - 3:4, 5:1, 13:22, 15:16
**entitled** [1] - 31:5
**especially** [1] - 28:24
**evaluate** [1] - 9:12
**evidence** [38] - 6:13, 7:4, 7:5, 7:12, 8:11, 8:14, 9:11, 10:14, 10:25, 11:4, 11:12, 11:17, 12:3, 12:4, 12:5, 12:8, 12:10, 12:13, 12:14, 12:18, 12:20, 12:22, 13:3, 13:4, 13:6, 13:7, 13:11, 14:6, 14:15, 14:16, 17:4, 17:16, 17:21, 18:9, 20:23, 21:3, 26:13
**exact** [1] - 8:12
**exactly** [2] - 7:22, 8:22
**excuse** [5] - 3:1, 3:7, 3:20, 24:19, 25:10
**exhibit** [1] - 14:11
**exhibits** [4] - 6:18, 10:3, 10:12, 10:22
**extension** [2] - 28:4, 28:14
**extent** [2] - 5:10, 13:8
**extremely** [1] - 26:22

**F**

**fact** [2] - 23:23, 26:7
**fairly** [1] - 6:21
**False** [7] - 8:25, 17:4, 17:11, 17:17, 17:22, 18:10, 21:4

**false** [8] - 8:2, 8:5, 8:10, 8:13, 8:20, 9:1, 17:9, 17:12
**families** [2] - 28:24, 30:2
**far** [2] - 26:11, 29:4
**favorable** [1] - 11:17
**federal** [5] - 6:17, 10:2, 10:9, 14:10, 17:22
**FEDERAL** [1] - 31:1
**few** [4] - 2:6, 3:10, 25:3, 25:7
**file** [2] - 27:22, 28:13
**findings** [3] - 6:10, 7:9, 14:4
**fine** [3] - 2:19, 2:20, 3:13
**first** [8] - 6:14, 7:6, 7:7, 7:13, 9:5, 9:17, 28:8, 28:17
**five** [1] - 8:4
**Florida** [2] - 18:24, 21:18
**focus** [1] - 10:24
**folks** [20] - 1:5, 1:14, 1:21, 3:5, 3:24, 5:2, 5:19, 13:16, 13:23, 14:1, 14:18, 14:22, 15:5, 15:12, 15:17, 24:23, 25:14, 27:21, 28:19, 29:4
**following** [2] - 27:24, 27:25
**foregoing** [1] - 31:4
**foreperson** [2] - 16:11, 16:20
**form** [5] - 8:5, 18:11, 18:14, 21:5, 21:7
**four** [2] - 4:10, 8:4
**framed** [1] - 7:23
**fraudulent** [1] - 9:1
**free** [2] - 27:4, 27:5
**Friday** [2] - 2:7, 3:11
**furthers** [1] - 29:9
**future** [1] - 26:24

**G**

**general** [2] - 7:23, 11:21
**Geoff** [1] - 1:17
**Georgia** [2] - 19:1, 21:20
**given** [1] - 27:1
**glad** [1] - 2:23
**Glenn** [2] - 4:9, 5:6
**grab** [1] - 16:17
**grant** [1] - 28:15
**guess** [2] - 9:10, 11:25

**guys** [5] - 3:15, 5:22, 26:19, 27:14, 28:13

**H**

**half** [2] - 28:25, 29:24
**happy** [2] - 25:4, 27:15
**hard** [1] - 9:12
**harder** [1] - 11:1
**Hawaii** [2] - 19:3, 21:22
**hear** [8] - 2:18, 3:18, 3:25, 6:25, 7:6, 7:13, 9:17, 27:15
**hefty** [1] - 28:2
**held** [1] - 1:1
**helpful** [1] - 26:22
**home** [1] - 27:14
**Honor** [38] - 1:8, 1:15, 1:17, 1:19, 1:25, 2:21, 4:1, 4:2, 4:21, 5:23, 7:21, 9:20, 11:8, 11:20, 13:15, 15:8, 15:10, 16:13, 16:15, 17:7, 18:4, 18:7, 23:18, 24:21, 24:22, 25:25, 26:18, 26:22, 27:9, 28:4, 28:18, 28:21, 29:10, 29:22, 30:4, 30:5, 30:6, 30:7
**Honor's** [1] - 11:15
**Honorable** [1] - 1:1
**hopefully** [1] - 14:1

**I**

**Iacobellis** [3] - 4:9, 4:11, 5:6
**identified** [2] - 18:11, 21:4
**identify** [1] - 8:25
**Illinois** [3] - 19:5, 21:24, 22:1
**inclined** [7] - 6:22, 7:2, 7:3, 9:5, 10:14, 10:16, 28:15
**including** [2] - 11:10, 27:6
**Indiana** [1] - 19:7
**indicating** [1] - 10:7
**individual** [4] - 6:17, 10:2, 10:9, 14:10
**information** [3] - 6:20, 10:5, 14:13
**informed** [1] - 27:4
**inspect** [1] - 16:18
**instruct** [1] - 4:17
**Instruction** [3] - 8:20, 8:24, 9:7

**instruction** [1] - 8:21
**instructions** [3] - 6:24, 7:3, 8:18
**Intelence** [2] - 17:5, 18:12
**interference** [1] - 26:16
**involved** [1] - 27:8
**Iowa** [2] - 19:9, 22:3
**Island** [2] - 20:8, 23:2
**issue** [1] - 11:13
**issues** [3] - 25:19, 26:12, 27:13
**items** [1] - 6:8

**J**

**Janssen** [4] - 1:16, 1:18, 1:20, 8:24, 17:1, 17:4, 17:10, 17:22, 18:10, 21:3, 29:21
**Jena** [2] - 10:21, 11:11
**Jersey** [2] - 19:23, 22:17
**Jessica** [1] - 16:25
**job** [1] - 10:24
**jobs** [1] - 13:13
**Josh** [1] - 1:10
**Judge** [3] - 1:2, 1:11, 2:2
**judgment** [2] - 27:24, 27:25
**June** [2] - 1:2, 31:11
**juror** [19] - 15:22, 15:23, 15:25, 16:1, 16:2, 16:3, 16:4, 16:5, 16:7, 16:8, 16:9, 24:2, 24:4, 24:6, 24:8, 24:10, 24:12, 24:14, 24:16
**JUROR** [78] - 16:1, 16:3, 16:4, 16:5, 16:6, 16:7, 16:8, 16:9, 16:13, 16:15, 17:7, 17:13, 18:4, 18:7, 18:17, 18:19, 18:21, 18:23, 18:25, 19:2, 19:4, 19:6, 19:8, 19:10, 19:12, 19:14, 19:16, 19:18, 19:20, 19:22, 19:24, 20:1, 20:3, 20:5, 20:7, 20:9, 20:11, 20:13, 20:15, 20:17, 20:20, 21:1, 21:11, 21:13, 21:15, 21:17, 21:19, 21:21, 21:23, 21:25, 22:2, 22:4, 22:6, 22:8, 22:10,

22:12, 22:14, 22:16, 22:18, 22:20, 22:22, 22:24, 23:1, 23:3, 23:6, 23:8, 23:10, 23:12, 23:15, 23:18, 24:3, 24:5, 24:7, 24:9, 24:11, 24:13, 24:15, 24:17

**jurors** [21] - 2:6, 2:9, 2:16, 2:25, 3:10, 3:25, 4:16, 4:23, 10:19, 15:7, 23:21, 23:24, 24:19, 25:1, 25:10, 26:1, 26:9, 26:10, 26:17, 26:23, 26:25

**jurors'** [1] - 16:23

**jury** [73] - 1:24, 3:4, 3:7, 3:23, 5:1, 5:14, 5:18, 6:10, 6:15, 7:3, 8:18, 9:25, 10:24, 13:22, 14:3, 14:8, 14:21, 15:16, 16:12, 18:15, 18:24, 19:1, 19:3, 19:5, 19:7, 19:9, 19:11, 19:13, 19:15, 19:17, 19:19, 19:21, 19:23, 19:25, 20:2, 20:4, 20:6, 20:8, 20:10, 20:12, 20:14, 20:16, 20:18, 21:8, 21:10, 21:12, 21:14, 21:16, 21:18, 21:20, 21:22, 21:24, 22:1, 22:3, 22:5, 22:7, 22:9, 22:11, 22:13, 22:15, 22:17, 22:19, 22:21, 22:23, 22:25, 23:2, 23:4, 23:7, 23:9, 23:11, 23:13, 23:22, 24:20

**Jury** [9] - 2:3, 3:8, 4:6, 5:4, 6:7, 13:24, 15:5, 15:19, 25:13

## K

**keep** [2] - 5:15, 5:20
**Kickback** [2] - 17:23, 21:5
**Kim** [7] - 4:7, 5:5, 5:20, 6:2, 13:20, 15:11, 16:19
**kissing** [1] - 29:11
**KLEIN** [2] - 1:19, 30:6
**Klein** [1] - 1:19
**knowing** [1] - 9:12

## L

**land** [1] - 9:9
**last** [1] - 29:23
**lastly** [1] - 23:13
**law** [1] - 9:7
**lawyers** [1] - 25:8
**learn** [1] - 26:22
**least** [3] - 2:23, 13:18, 28:16
**leave** [2] - 25:4, 25:9
**leaving** [1] - 25:5
**left** [2] - 13:17, 14:24
**length** [1] - 27:18
**letter** [1] - 28:13
**limit** [1] - 28:5
**limitation** [1] - 28:15
**limited** [4] - 6:11, 7:10, 8:9, 14:4
**limiting** [1] - 13:6
**listed** [2] - 18:13, 21:6
**literally** [1] - 29:12
**locate** [5] - 6:18, 10:3, 10:12, 10:25, 14:11
**located** [3] - 6:20, 10:5, 14:13
**logistics** [1] - 2:5
**look** [6] - 2:9, 8:23, 11:1, 27:20, 28:7, 29:2
**looking** [1] - 28:1
**Louisiana** [2] - 19:11, 22:5
**LP** [1] - 17:1

## M

**MARKETOS** [31] - 1:8, 1:25, 2:20, 4:1, 4:21, 5:23, 7:15, 7:17, 8:16, 9:19, 10:10, 10:16, 11:7, 12:5, 12:8, 12:25, 13:14, 15:8, 24:21, 25:22, 25:24, 26:18, 26:21, 27:3, 27:9, 28:20, 28:23, 29:10, 29:16, 29:19, 30:5
**Marketos** [6] - 1:9, 7:13, 9:17, 11:6, 15:7, 25:17
**Massachusetts** [2] - 19:13, 22:7
**matter** [2] - 16:25, 31:5
**Mattes** [3] - 4:9, 4:11, 5:6
**McKay** [1] - 31:11
**McKay-Soule** [1] - 31:11

**mean** [10] - 9:10, 10:18, 12:20, 13:5, 27:20, 27:25, 28:7, 29:1
**meaning** [2] - 7:16, 13:12
**means** [1] - 28:20
**meant** [1] - 27:3
**meantime** [1] - 4:17
**meet** [1] - 25:8
**Megan** [2] - 28:24, 31:11
**members** [1] - 3:7
**message** [2] - 2:13, 3:14
**Mexico** [2] - 19:25, 22:19
**Michigan** [2] - 19:15, 22:9
**might** [1] - 8:23
**Mike** [2] - 4:8, 5:5
**mind** [1] - 13:20
**Minnesota** [2] - 19:17, 22:11
**minutes** [4] - 13:17, 14:24, 25:4, 29:13
**misleading** [2] - 9:6, 13:5
**miss** [1] - 28:23
**missing** [1] - 8:7
**moments** [1] - 25:7
**Monday** [7] - 2:8, 2:12, 2:17, 3:12, 3:17, 28:21, 29:2
**Montana** [2] - 19:19, 22:13
**month** [2] - 28:24, 29:23
**moot** [2] - 2:14, 3:14
**morning** [13] - 1:6, 1:8, 1:10, 1:12, 1:14, 1:15, 1:17, 1:19, 1:21, 3:5, 3:7, 3:17, 3:22
**most** [1] - 29:16
**motion** [2] - 25:19, 27:23
**moving** [2] - 18:8, 26:11
**MR** [48] - 1:8, 1:10, 1:11, 1:17, 1:19, 1:25, 2:20, 4:1, 4:21, 5:23, 7:15, 7:17, 7:21, 8:3, 8:16, 9:10, 9:19, 10:10, 10:16, 11:7, 11:20, 12:5, 12:8, 12:16, 12:22, 12:25, 13:14, 15:8, 24:21, 25:22, 25:24, 26:18, 26:21, 27:3,

27:9, 27:16, 27:24, 28:3, 28:10, 28:18, 28:20, 28:23, 29:10, 29:16, 29:19, 30:5, 30:6, 30:7
**MS** [12] - 1:12, 1:15, 2:2, 2:21, 4:2, 4:22, 5:24, 7:19, 15:10, 24:22, 29:22, 30:4
**must** [1] - 8:25

## N

**necessarily** [1] - 28:12
**need** [21] - 1:21, 1:23, 2:11, 5:25, 13:9, 14:24, 24:18, 24:19, 25:6, 25:7, 25:15, 25:16, 25:17, 25:20, 26:11, 27:11, 27:14, 27:16, 28:4, 28:11, 28:20
**needed** [2] - 2:6, 3:10
**Nevada** [2] - 19:21, 22:15
**New** [6] - 19:23, 19:25, 20:2, 22:17, 22:19, 22:21
**none** [4] - 6:11, 7:10, 8:9, 14:4
**North** [2] - 20:4, 22:23
**notes** [1] - 11:23
**nothing** [1] - 29:14
**notwithstanding** [3] - 6:17, 10:2, 14:10
**number** [51] - 6:10, 6:16, 7:2, 7:3, 7:7, 7:8, 8:12, 8:15, 8:20, 9:1, 9:9, 9:15, 9:17, 9:18, 9:25, 10:1, 10:8, 12:2, 12:11, 12:12, 14:3, 14:8, 14:9, 14:14, 15:23, 15:25, 16:1, 16:2, 16:3, 16:4, 16:5, 16:6, 16:7, 16:8, 16:9, 17:1, 17:9, 17:12, 18:2, 18:5, 23:17, 24:2, 24:4, 24:6, 24:8, 24:10, 24:12, 24:14, 24:16
**Number** [11] - 2:4, 3:9, 4:6, 5:4, 6:7, 8:20, 8:24, 9:8, 13:24, 15:6, 15:19
**numbered** [1] - 6:9

## O

**objection** [6] - 4:19,

**4:21**, 4:22, 12:15, 12:19, 27:7
**obligations** [2] - 2:6, 3:10
**occurred** [1] - 15:3
**OFFICIAL** [1] - 31:1
**Oklahoma** [2] - 20:6, 22:25
**one** [14] - 2:13, 3:13, 4:14, 8:6, 9:9, 9:15, 12:11, 14:3, 14:17, 16:24, 18:14, 21:7, 23:24
**open** [2] - 1:1, 24:1
**opposed** [1] - 7:4
**order** [1] - 16:24
**otherwise** [2] - 2:19
**outset** [1] - 26:7

## P

**p.m** [9] - 2:8, 3:12, 3:15, 3:16, 13:22, 14:21, 15:16, 25:13, 30:9
**page** [3] - 13:15, 28:5, 28:14
**paragraph** [1] - 9:3
**partial** [2] - 8:6, 29:7
**particular** [2] - 18:15, 21:8
**parties** [1] - 23:19
**Penelow** [1] - 17:1
**performance** [1] - 26:20
**permitted** [1] - 26:24
**permitting** [2] - 26:1, 26:2
**Pete** [1] - 1:9
**philosophy** [1] - 6:23
**piece** [1] - 29:7
**pleasure** [1] - 29:25
**poll** [2] - 23:20, 23:22
**portion** [5] - 6:12, 7:11, 8:10, 11:8, 14:5
**posing** [1] - 8:22
**post** [1] - 26:17
**post-verdict** [1] - 26:17
**posted** [1] - 5:20
**posttrial** [1] - 27:13
**practice** [6] - 9:23, 23:20, 25:25, 26:3, 26:16, 26:17
**prefer** [2] - 2:7, 3:11
**prematurely** [1] - 28:17
**prepare** [1] - 4:13
**preponderance** [11] -

6:13, 7:12, 8:11, 8:14, 14:6, 17:3, 17:16, 17:21, 18:9, 20:23, 21:3
**present** [1] - 15:24
**presented** [5] - 12:3, 12:13, 13:3, 13:7, 14:15
**presume** [3] - 3:16, 11:19, 18:1
**pretty** [2] - 13:11, 26:14
**Prezista** [2] - 17:5, 18:12
**problem** [1] - 8:21
**PROCEEDINGS** [1] - 1:1
**proceedings** [1] - 31:5
**process** [6] - 4:19, 26:6, 26:8, 26:10, 26:22, 27:8
**Products** [2] - 17:1, 29:21
**Professor** [4] - 6:16, 10:1, 11:11, 14:9
**prohibit** [1] - 26:25
**promoting** [2] - 17:5, 18:11
**promptly** [1] - 3:21
**proposition** [1] - 11:21
**prove** [7] - 17:3, 17:10, 17:15, 17:21, 18:9, 20:22, 21:2
**provide** [3] - 4:15, 4:16, 5:8
**provided** [6] - 12:6, 12:9, 12:10, 12:14, 12:17
**providing** [3] - 6:16, 10:1, 14:9
**punctuality** [1] - 29:11
**purposes** [2] - 25:22, 25:24
**put** [3] - 3:8, 11:13, 29:5

## Q

**questions** [4] - 6:21, 7:1, 16:22, 27:17
**QURAISHI** [1] - 1:2

## R

**RDR** [1] - 31:11
**reached** [1] - 16:12
**read** [12] - 2:4, 6:8, 7:9, 8:8, 9:19, 9:23, 12:11, 13:1, 13:24,

16:22, 17:2, 24:1
**readily** [1] - 5:21
**reads** [6] - 3:9, 4:6, 9:25, 14:8, 15:6, 15:19
**ready** [4] - 4:14, 4:16
**really** [4] - 2:4, 2:18, 26:8, 28:11
**reason** [1] - 29:1
**received** [6] - 2:3, 4:6, 5:4, 6:7, 15:5, 15:19
**recess** [4] - 3:24, 4:3, 6:4, 15:3
**recollection** [2] - 11:2, 11:4
**reconvene** [1] - 2:12
**record** [8] - 3:8, 5:15, 9:11, 11:8, 15:22, 15:24, 29:5, 31:5
**redacted** [1] - 4:13
**redactions** [1] - 5:10
**refer** [1] - 8:19
**regarding** [1] - 13:24
**Relators** [16] - 1:7, 1:9, 1:10, 1:11, 1:13, 7:6, 8:4, 17:3, 17:9, 17:15, 17:21, 18:9, 20:22, 21:2, 25:24, 29:9
**remain** [3] - 4:4, 6:5, 15:4
**Reporter** [1] - 31:12
**REPORTER'S** [1] - 31:1
**request** [6] - 10:6, 12:2, 13:25, 14:14, 28:7, 28:9
**requested** [3] - 13:8, 23:20, 26:4
**requesting** [2] - 4:10, 28:14
**required** [1] - 25:7
**respect** [13] - 12:2, 14:3, 17:2, 17:8, 17:12, 17:14, 17:18, 17:20, 18:1, 18:5, 20:21, 23:16, 26:1
**respond** [6] - 5:7, 7:14, 9:5, 9:15, 11:23, 13:25
**response** [9] - 8:6, 9:15, 10:15, 12:2, 12:6, 12:12, 13:2, 14:7, 14:14
**responses** [3] - 5:15, 14:17, 16:23
**result** [3] - 17:10, 17:17, 20:24
**resumed** [2] - 3:23, 14:21

**resumes** [1] - 5:18
**return** [3] - 5:14, 8:6, 16:19
**reversed** [1] - 10:20
**review** [9] - 8:21, 10:25, 12:4, 12:5, 12:7, 12:13, 13:3, 13:10, 14:16
**reviewing** [5] - 7:1, 7:2, 7:5, 8:18, 26:13
**Rhode** [2] - 20:8, 23:2
**rise** [11] - 1:4, 3:3, 4:25, 5:17, 13:21, 14:20, 15:15, 16:11, 25:12, 30:8
**roll** [1] - 15:21
**room** [3] - 5:15, 24:20, 26:12
**Rule** [2] - 25:19, 27:18
**rule** [1] - 27:22
**run** [2] - 29:12, 29:16
**RUSS** [1] - 1:10
**Russ** [1] - 1:10

## S

**Saladana** [2] - 4:11, 5:5
**Saltana** [1] - 4:8
**seat** [8] - 3:6, 3:24, 5:2, 5:19, 13:23, 14:23, 15:18, 25:14
**seated** [4] - 1:5, 4:4, 6:5, 15:4
**second** [1] - 6:15
**see** [6] - 8:23, 13:5, 15:2, 15:14, 24:18, 30:2
**service** [3] - 24:24, 25:11, 25:13
**serving** [1] - 26:10
**several** [1] - 24:25
**Shaked** [4] - 6:16, 10:1, 10:8, 14:9
**Shaked's** [1] - 11:11
**sheet** [4] - 16:17, 16:20, 16:23, 17:2
**shoes** [1] - 10:19
**short** [3] - 5:12, 15:3, 28:13
**sidebar** [1] - 24:19
**sides** [1] - 6:25
**significant** [2] - 2:24, 28:3
**simply** [3] - 9:15, 9:23, 13:2
**slower** [1] - 9:22
**slowly** [1] - 6:8
**somewhat** [1] - 7:23
**somewhere** [1] - 25:6

**soon** [3] - 4:15, 5:21, 30:3
**sorry** [2] - 12:7, 25:23
**sort** [2] - 11:21, 12:16
**Soule** [1] - 31:11
**sounds** [3] - 11:5, 12:23, 29:3
**specific** [1] - 11:17
**staff** [1] - 29:23
**starts** [1] - 1:23
**state** [6] - 6:17, 10:2, 10:9, 14:10, 15:23, 18:10, 18:14, 18:15, 21:7, 21:9
**states** [7] - 2:5, 6:15, 18:11, 18:13, 20:23, 21:4, 21:6
**States** [4] - 1:2, 9:2, 16:25, 17:16
**states'** [1] - 21:4
**stating** [1] - 10:21
**Statute** [1] - 17:23, 21:5
**stepping** [1] - 10:19
**stick** [2] - 14:23, 15:2
**still** [1] - 13:17
**subject** [1] - 5:11
**submitted** [2] - 9:1, 17:10
**subset** [1] - 8:1
**suggestion** [2] - 4:12, 7:14
**support** [2] - 9:11, 11:4
**sustained** [2] - 17:16, 20:23

## T

**ten** [1] - 29:13
**Tennessee** [2] - 20:10, 23:5
**testimony** [17] - 6:16, 6:18, 6:19, 10:1, 10:3, 10:4, 10:8, 10:12, 10:13, 10:22, 10:23, 11:3, 11:10, 12:17, 14:9, 14:11, 14:12
**Texas** [2] - 20:12, 23:7
**THE** [148] - 1:4, 1:5, 1:14, 1:21, 2:1, 2:3, 2:22, 3:3, 3:5, 3:24, 4:4, 4:5, 4:23, 4:25, 5:2, 5:17, 5:19, 5:25, 6:3, 6:5, 6:6, 7:16, 7:18, 7:20, 8:2, 8:8, 8:17, 9:14, 9:21, 10:11, 10:18, 11:18, 11:22, 12:7, 12:10,

12:19, 12:24, 13:1, 13:16, 13:21, 13:23, 14:20, 14:22, 15:4, 15:5, 15:9, 15:11, 15:13, 15:14, 15:15, 15:17, 16:2, 16:10, 16:14, 16:16, 17:8, 17:14, 17:19, 17:20, 17:24, 17:25, 18:5, 18:8, 18:18, 18:20, 18:22, 18:24, 19:1, 19:3, 19:5, 19:7, 19:9, 19:11, 19:13, 19:15, 19:17, 19:19, 19:21, 19:23, 19:25, 20:2, 20:4, 20:6, 20:8, 20:10, 20:12, 20:14, 20:16, 20:18, 20:21, 21:2, 21:12, 21:14, 21:16, 21:18, 21:20, 21:22, 21:24, 22:1, 22:3, 22:5, 22:7, 22:9, 22:11, 22:13, 22:15, 22:17, 22:19, 22:21, 22:23, 22:25, 23:2, 23:4, 23:7, 23:9, 23:11, 23:13, 23:16, 23:19, 24:4, 24:6, 24:8, 24:10, 24:12, 24:14, 24:16, 24:18, 24:23, 25:12, 25:14, 25:23, 26:3, 26:19, 26:25, 27:5, 27:10, 27:20, 27:25, 28:6, 28:11, 28:19, 28:22, 29:1, 29:15, 29:18, 29:20, 29:25, 30:8
**theories** [2] - 8:1, 8:4
**they've** [2] - 12:17, 27:1
**timing** [1] - 27:17
**today** [11] - 2:6, 2:8, 2:15, 2:23, 3:10, 3:12, 25:15, 25:18, 27:11, 27:17, 29:2
**tomorrow** [2] - 2:7, 2:12, 3:11
**touch** [1] - 30:3
**transcript** [1] - 31:4
**transcripts** [9] - 4:7, 4:10, 4:13, 4:18, 5:5, 5:8, 5:12, 6:1, 13:8
**trial** [3] - 13:8, 25:2, 29:6
**trouble** [2] - 10:11, 11:1
**true** [3] - 6:13, 7:12, 14:6
**trying** [1] - 7:4

**two** [11] - 6:8, 6:21, 9:17, 9:18, 9:25, 12:2, 12:12, 13:25, 14:8, 14:14, 14:17

## U

**unable** [3] - 6:18, 10:3, 14:11
**unanimous** [2] - 16:14, 23:23
**under** [2] - 7:22, 8:1
**United** [4] - 1:2, 9:2, 16:25, 17:16
**unlawfully** [2] - 17:5, 18:11
**up** [3] - 11:13, 27:19, 29:11

## V

**verdict** [31] - 8:5, 15:6, 15:20, 15:21, 16:12, 16:14, 16:17, 16:19, 16:23, 17:2, 18:11, 18:14, 21:5, 21:7, 23:23, 23:25, 24:2, 24:4, 24:6, 24:8, 24:10, 24:12, 24:14, 24:16, 25:21, 26:17, 27:1, 29:2, 29:7
**versus** [6] - 6:17, 10:2, 10:8, 10:9, 14:10, 17:1
**view** [1] - 25:1
**violated** [5] - 8:25, 17:4, 17:22, 18:10, 21:3
**violating** [2] - 17:22, 21:5
**violations** [3] - 17:11, 17:17, 20:24
**Virginia** [2] - 20:14, 23:9

## W

**wait** [2] - 3:18, 15:2
**waiting** [2] - 4:18, 5:11
**walking** [1] - 29:12
**Washington** [2] - 20:16, 23:11
**weekend** [1] - 30:2
**weeks** [1] - 24:25
**WENDEL** [1] - 1:12
**Wendel** [1] - 1:12
**Whitney** [1] - 1:12
**willing** [1] - 2:17
**WIRMANI** [1] - 1:11
**Wirmani** [1] - 1:11

**WITNESS** [2] - 17:19, 17:24
**witnesses** [1] - 4:11
**word** [1] - 11:25
**worth** [1] - 25:18
**WYATT** [13] - 1:17, 7:21, 8:3, 9:10, 11:20, 12:16, 12:22, 27:16, 27:24, 28:3, 28:10, 28:18, 30:7
**Wyatt** [5] - 1:17, 7:19, 7:20, 11:18, 27:12

## Y

**York** [2] - 20:2, 22:21

## Z

**ZAHID** [1] - 1:2
**zero** [4] - 8:12, 18:3, 18:6, 23:17